Brian Alexander CLIFTON,
petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A12–0571.

Supreme Court of Minnesota.

May 15, 2013.

Brian Alexander Clifton, Rush City, MN, pro se.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Elizabeth Johnston, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

GILDEA, Chief Justice.

Appellant Brian Alexander Clifton was convicted in September 2003 of premeditated first-degree murder for the shooting death of Steven Nix. We affirmed Clifton's conviction on direct appeal. *State v. Clifton*, 701 N.W.2d 793, 801 (Minn.2005). In this case, Clifton appeals the denial of his petition for postconviction relief. Because we conclude that the postconviction court properly denied Clifton's petition, we affirm.

The facts surrounding Nix's murder are set forth in detail in our opinion affirming Clifton's conviction on direct appeal. *Id.* at 796–97. We limit our discussion to facts directly relevant to this appeal. In February 2002, Nix was charged with the attempted murder of Clifton's brother but was acquitted after a jury trial. After the jury returned its verdict, Clifton became angry and made comments to the effect of "this could be taken care of some other way," stated he was "going to kill" or "get" Nix, and made threatening gestures toward Nix.

On September 23, 2002, Nix and his friend D.N. were parked in D.N.'s 1987 GMC Jimmy on a residential street. Nix was in the front passenger seat and D.N. was in the driver's seat. D.N.'s friend, C.C., was in the cargo area working on a mechanical problem with the rear window.

In addition to Nix, D.N., and C.C., Clifton and his cousin, Claudell Walker, were also in the area. As Walker approached Clifton, Walker saw Clifton walk up to the GMC Jimmy and shoot Nix in the head. When Clifton tried to fire another shot, the gun jammed. D.N. and C.C. jumped out of the vehicle and, upon determining he had not been hit, D.N. got back into the vehicle. Finding Nix unresponsive and bleeding from the head, D.N. immediately drove him to North Memorial Hospital. Nix was pronounced dead at 8:00 p.m. An autopsy showed that the bullet, fired from a gun at close range, had lacerated Nix's brain and fractured his skull.

When police spoke with D.N. at the hospital and the police station, D.N. identified Clifton based on a photo display, stating "[t]hat's him, that's your shooter." D.N. also told the police that shortly before the shooting another man had walked by the vehicle, whom D.N. identified as Walker. The police later located Walker and C.C., and both of them identified Clifton as the shooter.

Following the police investigation, Clifton was indicted by a grand jury for first-degree premeditated murder under Minn. Stat. § 609.185(a)(1) (2004) and second-degree intentional murder under Minn.Stat. § 609.19, subd. 1(1) (2004). Walker testified during the grand jury process and identified Clifton as the shooter.

Clifton was tried before a jury in Hennepin County District Court in March 2003. During the March trial, Walker recanted the statements he had made to police and to the grand jury. Walker testified that he had not seen Clifton shoot Nix and that he did not know who shot Nix. Then, after a lunch break, Walker changed his testimony and said that he did see Clifton shoot Nix. Walker also explained that the testimony he gave earlier was not accurate because he was nervous testifying in front of his family. The March trial ended in a mistrial after the jury was unable to reach a unanimous verdict.

Clifton was retried in September 2003. Walker testified at the second trial that he saw Clifton take a gun, approach D.N.'s truck, and shoot Nix. Walker further testified that he had lied during his initial testimony in Clifton's first trial but af-

firmed that his afternoon testimony, which was similar to that given in the second trial, was truthful. The State questioned Walker at length about the reasons for his false testimony in the first trial. In response to the State's questions, Walker explained that he was nervous and concerned about testifying in front of his family and that he did not want to testify against Clifton. Walker also testified that in between the first and second trials, he was assaulted and robbed by Clifton's brother and two other men for testifying against Clifton during the first trial.

On cross-examination, Clifton's counsel questioned Walker regarding the fact that he testified untruthfully under oath by reading portions of his testimony from the first trial. In particular, Clifton's counsel reminded Walker that he had testified, "I don't know what [Nix] got shot with, I wasn't close like that, but whoever I thought [Clifton] was that day, it wasn't him. All I seen was a gun, that was it." In response, Walker acknowledged that he testified that Clifton did not shoot Nix during the first trial, but then stated that that portion of his testimony was "a lie." And Walker confirmed the truthfulness of the portion of his testimony where he said that Clifton was the person he saw shoot Nix.

In addition to Walker, both D.N. and C.C. testified at the second trial. D.N. testified that Clifton shot Nix as Nix sat next to D.N. in the front passenger seat of D.N.'s vehicle. C.C. was in the back of the vehicle and testified that he saw Clifton shoot Nix.

At the conclusion of the second trial, the jury found Clifton guilty of first-degree premeditated murder. After being convicted, Clifton filed a direct appeal. We concluded that "the evidence clearly supported the verdict" and affirmed Clifton's conviction. *Clifton,* 701 N.W.2d at 801.

On September 6, 2011, Clifton filed a petition for postconviction relief requesting a new trial, or at minimum an evidentiary hearing, based on recanted testimony from Walker and newly discovered evidence. In seeking postconviction relief, Clifton relied on affidavits from Walker and his mother, Madeline Walker. Walker's affidavit, dated August 4, 2011, states that he "falsely accused Brian Clifton of committing the crimes he was accused of in 2003 at his trials." Walker went on to claim that he falsely stated under oath that he had witnessed Clifton holding a weapon and heard shots in "a specific place near the scene of the crime." He further stated that his false testimony was "used as an avenue to protect myself and my Mom at the time from a number of present threats from the true assailant, who really committed the crime." Walker does not, however, identify the true assailant.

In her affidavit, Madeline Walker states that her son, Walker, came to her on March 10, 2011, and "expressed a very serious issue in attempt to clear his conscience and correct a wrong that he made March 2003 during the trial of my nephew Brian Clifton." Madeline Walker also states that Walker "was forced to testify to what he had already lied about" to satisfy debts and because he was afraid of the person who actually did the shooting and Nix's family. She further stated that because she had moved out of Minnesota after the trial, Walker "feels comfortable comming [sic] out with the truth, now that there is no immediate danger to me and that he has taken care of the debts and believes that no one is looking for him concerning the incident."

The postconviction court denied Clifton's motions for an evidentiary hearing and a new trial. The court ruled that Clifton's motion was untimely because it was filed after the 2–year statutory limit and no

exception to the limitations period applied. Further, the court concluded that Walker's evidence was cumulative because there were two other eyewitnesses and Walker's testimony at the second trial was consistent with that of the other two witnesses. Finally, the court was not satisfied that Walker's testimony at the second trial was false, that the jury could have reached a different outcome without Walker's testimony, or that Clifton could claim surprise at Walker's trial testimony. The court therefore denied Clifton's petition. This appeal follows.

 When we review "the decision[s] of the postconviction court, we review questions of law de novo." *Rickert v. State*, 795 N.W.2d 236, 239 (Minn.2011); *accord Miles v. State*, 800 N.W.2d 778, 781 (Minn.2011). Our "review of factual findings is limited to determining whether there is sufficient evidence in the record to support the findings of the postconviction court." *Rickert*, 795 N.W.2d at 239. We afford "great deference" to the postconviction "court's findings of fact and will not reverse the findings unless they are clearly erroneous." *See Riley v. State*, 792 N.W.2d 831, 833 (Minn.2011) (citation omitted) (internal quotation marks omitted).

Petitions for postconviction relief are governed by Minn.Stat. ch. 590 (2012). A petitioner seeking postconviction relief bears the "burden of proof of the facts alleged in the petition . . . to establish the facts by a fair preponderance of the evidence." Minn.Stat. § 590.04, subd. 3. A petitioner is entitled to a hearing on his petition unless the "petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1.

## I.

 We turn first to the question of whether Clifton's petition was timely filed. The Legislature added a limitations period to the postconviction statute by amending section 590.01 in 2005. *See* Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 901, 1097–98 (codified at Minn.Stat. § 590.01, subd. 4). Subdivision 4(a) in the amended statute provides that a petition for postconviction relief cannot be filed more than 2 years after the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn.Stat. § 590.01, subd. 4(a). We affirmed Clifton's conviction of first-degree premeditated murder on August 4, 2005. *Clifton*, 701 N.W.2d at 793. But Clifton did not file his petition until September 6, 2011. Clifton's petition therefore was filed well after the statute's 2–year time limit expired, and his petition is time barred under subdivision 4(a).

The Legislature has, however, provided exceptions to the time bar in subdivision 4(a). *See* Minn.Stat. § 590.01, subd. 4(b).[1] Clifton relies on the exception for newly discovered evidence in subdivision 4(b)(2), and he claims that the facts alleged in the affidavits of Walker and Walker's mother satisfy this exception.[2] Clifton argues that

---

1. In order for the postconviction court to hear Clifton's petition based on one of the exceptions in subdivision 4(b), the postconviction statute requires that his petition "must be filed within two years of the date the claim arises." Minn.Stat. § 590.01, subd. 4(c). The State does not contest Clifton's argument that he filed his petition within the 2–year period under subdivision 4(c), and we there-

fore do not consider this provision further. *Carlton v. State*, 816 N.W.2d 590, 600, 606 (Minn.2012) (concluding that the State waived the argument that Minn.Stat. § 590.01, subd. 4(c) barred petition).

2. In his memorandum to the postconviction court, Clifton asserted that it was "in [the] interest of justice to preserve petitioner's right

the affidavits allege new facts not before the district court in his second trial, including Walker's recantation of his identification of Clifton as the shooter and Walker's suggestion that there was an alternative perpetrator. Clifton further argues that Walker's affidavit is credible because it is supported by additional newly discovered evidence in the form of Madeline Walker's affidavit. The State argues that the affidavits in question do not satisfy the "newly discovered evidence" exception because they are cumulative of Walker's testimony in the first trial, about which he was thoroughly examined at the second trial. More specifically, the State contends that this is not Walker's first recantation of his identification of Clifton as the shooter nor the first time he suggests the presence of an alternative perpetrator. We agree with the State that Clifton is not entitled to relief under the exception for newly discovered evidence.

In order to satisfy the requirements of the newly discovered evidence exception, the petitioner must allege the existence of

> newly discovered evidence ... that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a post-conviction petition, and the evidence is not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted.

Minn.Stat. § 590.01, subd. 4(b)(2). Clifton has not met his burden to demonstrate that he is entitled to relief under this exception.

Construing Clifton's petition "liberally," it arguably identifies three pieces of new evidence: (1) Walker's recantation of his identification of Clifton as the shooter; (2) Walker's assertion that somebody other than Clifton was the shooter; and (3) Walker's explanation for his provision of false testimony identifying Clifton as the shooter. *See* Minn.Stat. § 590.03 ("The court shall liberally construe the petition and any amendments thereto and shall look to the substance thereof and waive any irregularities or defects in form.").

Walker's recantation and his allegation of an alternative perpetrator are not newly discovered evidence because this evidence was presented to the jury at trial. During the trial, Walker was questioned by both parties about his motivation for identifying Clifton and his motivation for recanting that identification and suggesting the presence of an alternative perpetrator. The jury therefore had ample opportunity to consider Walker's conflicting assertions—one that Clifton was not the shooter and one that he was. Because Walker's recantation and his suggestion of an alternative perpetrator are cumulative of the evidence presented at trial, that evidence is not newly discovered evidence under the statute. *See* Minn.Stat. § 590.01, subd. 4(b)(2).

The other evidence in Walker's affidavit—explaining that he falsely identified Clifton as the shooter because he was

---

to a fair trial and due process." But Clifton does not expressly assert the "interests of justice" provision in Minn.Stat. § 590.01, subd. 4(b)(5) as an exception to the application of the 2–year time bar in subdivision 4(a). Instead, he invokes a different exception under Minn.Stat. § 590.01, subd. 4(b)—the newly discovered evidence exception. *See, e.g.,*

*Rickert,* 795 N.W.2d at 241 (holding that where the pleadings specifically cited the "interest of justice" exception under subdivision 4(b), the exception was invoked). Because we conclude that Clifton did not invoke the interests of justice exception in Minn.Stat. § 590.01, subd. 4(b)(5), we do not address it here.

afraid—and the evidence provided in Madeline Walker's affidavit likewise is not newly discovered evidence under the statute. With respect to Madeline Walker's affidavit, she was not present the night of the incident and has no first-hand knowledge to impart. Madeline Walker's affidavit states only that Walker told her he had lied during the second trial because he was in debt and afraid. To satisfy the newly discovered evidence exception, however, the evidence must clearly and convincingly demonstrate the petitioner's innocence. Minn.Stat. § 590.01, subd. 4(b)(2). The differing reasons set forth in Walker's affidavit and in Madeline Walker's affidavit for why Walker now contends that he falsely identified Clifton do not meet that standard. *Gassler v. State*, 787 N.W.2d 575, 583 (Minn.2010) ("In order to prove a claim by clear and convincing evidence, a party's evidence should be unequivocal, intrinsically probable and credible, and free from frailties."). This is especially true because even without Walker's testimony identifying Clifton, the record contains evidence from two other eyewitnesses to the shooting. Both D.N. and C.C., who were in the car with Nix when Nix was shot, testified at the September 2003 trial, and both identified Clifton as the individual who shot Nix. Witnesses also testified at trial that Clifton had previously threatened Nix and that, when Clifton crossed paths with Nix before the shooting, he made threatening gestures towards Nix. Because the explanations for Walker's supposed false identification of Clifton do not constitute clear and convincing evidence of Clifton's innocence, these explanations are not newly discovered evidence. *See* Minn.Stat. § 590.01, subd. 4(b)(2).

In sum, we conclude that Clifton failed to satisfy the newly discovered evidence exception in Minn.Stat. § 590.01, subd. 4(b)(2). Because Clifton does not satisfy the newly discovered evidence exception,

Clifton's postconviction petition is time barred under Minn.Stat. § 590.01, subd. 4(a). We therefore affirm the decision of the postconviction court.

Affirmed.

