*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0614**

John Stephen Woodward, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed March 16, 2015
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-K5-04-002433

Cathryn Middlebrook, Chief Appellate Public Defender, Katie Conners, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Stauber, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the postconviction court's summary denial of his petition for postconviction relief, arguing that the petition was not time-barred and that he is entitled

to relief on the grounds of newly discovered evidence, manifest injustice, and ineffective assistance of counsel. We affirm.

## FACTS

In June 2004, police stopped a vehicle driven by appellant John Stephen Woodward for weaving from lane to lane without signaling. In the course of the stop, an officer saw Woodward "grab[] a small baggie that was between his legs and put his hands in his pockets." The officer recovered the baggie, suspecting that it contained methamphetamine, and Woodward admitted that the substance was methamphetamine. Woodward also had a narcotics pipe in the vehicle and admitted that he had used methamphetamine earlier that evening. The St. Paul Crime Lab (crime lab) analyzed the substance in the baggie, which had a net weight of 0.8 grams and tested positive for methamphetamine. Woodward pleaded guilty to fifth-degree controlled-substance crime (possession). Woodward testified at the plea hearing that the police officer found "[a] package of methamphetamine" in his pocket and that he had a methamphetamine pipe "in the vehicle" during the traffic stop. In July 2005, the district court sentenced Woodward to a stay of adjudication and placed him on probation for five years.

In September 2007, Woodward was convicted of conspiracy to commit first-degree controlled-substance crime (sale of ten or more grams of methamphetamine), second-degree controlled substance crime (sale of three or more grams of methamphetamine), and fifth-degree controlled-substance crime (possession), and the district court sentenced him to 94 months' imprisonment.

In January 2008, the district court vacated Woodward's 2005 stay of adjudication, and on April 9, at Woodward's request, the court imposed and executed the presumptive sentence of one year and one day. In October 2012, Woodward filed a postconviction-relief petition, seeking to vacate his 2008 conviction for his 2004 controlled-substance crime. Respondent State of Minnesota opposed the petition. Woodward requested that the proceedings be delayed and subsequently filed a supplemental memorandum in support of his petition. In November 2013, the postconviction court heard oral argument and, in February 2014, denied Woodward's petition without an evidentiary hearing.

This appeal follows.

## DECISION

"[A] person convicted of a crime, who claims that . . . the conviction obtained or the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state . . . may commence a proceeding to secure relief . . . ." Minn. Stat. § 590.01, subd. 1 (2014). But "[n]o petition for postconviction relief may be filed more than two years after . . . the entry of judgment of conviction or sentence if no direct appeal is filed." *Id.*, subd. 4(a) (2014). Notwithstanding that two-year time limit,

> a court may hear a petition for postconviction relief if:
>
> . . . .
>
> (2) the petitioner alleges the existence of newly discovered evidence, including scientific evidence, that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition, and the evidence is

3

not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted; [or]

. . . .

(5) the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice.

*Id.,* subd. 4(b) (2014). "[Appellate courts] review the denial of a petition for postconviction relief without a hearing for an abuse of discretion. In particular, [appellate courts] review the postconviction court's legal determinations de novo and its factual findings under the clearly erroneous standard." *Chambers v. State*, 831 N.W.2d 311, 318 (Minn. 2013) (citation omitted).

Woodward argues that he is entitled to withdraw his guilty plea to the 2004 controlled-substance crime because (1) evidence of crime-lab deficiencies meets the *Rainer* test for newly discovered evidence, warranting trial; (2) the crime-lab deficiencies rendered his plea inaccurate, involuntary, or unintelligent; and (3) his trial counsel provided ineffective assistance. Woodward did not appeal his 2008 controlled-substance conviction and therefore had two years from the entry of judgment of conviction or sentence to file a petition for postconviction relief. *See* Minn. Stat. § 590.01, subd. 4(a). Woodward did not file his postconviction petition until October 2012—more than four years after his sentencing in April 2008. Woodward asserts that the newly-discovered-evidence and interests-of-justice exceptions excuse the untimeliness of his petition. Specifically, he argues that evidence of crime-lab deficiencies satisfies the newly-

4

discovered-evidence exception under Minn. Stat. § 590.01, subd. 4(b)(2), and that "objective evidence of widespread, substandard drug testing" at the crime lab supports the application of the interests-of-justice exception under Minn. Stat. § 590.01, subd. 4(b)(5).

### Newly discovered evidence

> To satisfy the newly-discovered-evidence exception a petitioner must allege in part: (1) the existence of newly discovered evidence that could not have been ascertained by the exercise of due diligence within the two-year time period for filing a postconviction petition, and (2) that the newly discovered evidence establishes the petitioner's innocence by clear and convincing evidence.

*Erickson v. State*, 842 N.W.2d 314, 318 (Minn. 2014) (citing Minn. Stat. § 590.01, subd. 4(b)(2); *Clifton v. State*, 830 N.W.2d 434, 438–39 (Minn. 2013)). "Under Minn. Stat. § 590.01, subd. 4(b)(2), the burden of presenting clear and convincing evidence of innocence is on the petitioner." *Scott v. State*, 788 N.W.2d 497, 502 (Minn. 2010). "To prove a claim by clear and convincing evidence, a party's evidence should be unequivocal, intrinsically probable and credible, and free from frailties." *Riley v. State*, 819 N.W.2d 162, 170 (Minn. 2012) (quotation omitted).

In this case, Woodward has not demonstrated that the evidence of deficiencies at the crime lab could not have been ascertained by the exercise of due diligence by him or his counsel within the two-year time period for filing a postconviction petition. *See* Minn. Stat. § 590.01, subd. 4(b)(2). The state alleged in its 2004 complaint that "[t]he recovered substance was analyzed at the [crime lab] and had a net weight of 0.8 gram" and that "[i]t tested positive for methamphetamine." The complaint therefore placed Woodward on

5

notice that the state based the controlled-substance charge on the results of the crime-lab test. Woodward could have investigated and challenged the foundational reliability and/or validity of the test results. *See Roberts v. State*, 856 N.W.2d 287, 291 (Minn. App. 2014) (reaching same conclusion on similar facts in reliance on, inter alia, Minn. Stat. § 611.21(a), Minn. R. Crim. P. 9.01, subd. 1(4), 11.02, .04), *review denied* (Minn. Jan. 28, 2015). Woodward essentially admits that the crime-lab deficiencies could have been ascertained by the exercise of due diligence by arguing in support of his ineffective-assistance-of-trial-counsel claim that, if his trial counsel had "done more," counsel "would have discovered" evidence of deficiencies at the crime lab.

Moreover, the evidence of deficiencies at the crime lab does not "establish[] by a clear and convincing standard that [Woodward] is innocent of" the 2004 controlled-substance crime that resulted in his 2008 conviction. *See* Minn. Stat. § 590.01, subd. 4(b)(2). On this point, our recent opinion in *Roberts* is highly instructive:

> Roberts's new evidence regards the "sufficiency of the training, knowledge, and practices of laboratory employees" at the crime lab. But Roberts does not offer evidence regarding the chemical composition of the particular substance in his case. In fact, Roberts has never claimed—in district court, during postconviction proceedings, or on appeal—that the substance was not cocaine.
>
> . . . .
>
> [T]here was nonscientific evidence of guilt. The complaint suggested that the arresting officer suspected that the substance was crack cocaine based on its appearance. The complaint also indicated that Roberts ran from the officer after the substance fell out of his pant leg, and flight is evidence of "consciousness of guilt." These circumstances are fatal to Roberts's attempt to establish actual innocence based

6

on speculation regarding the validity of the test results in his case.

856 N.W.2d at 291–92 (citation omitted). Like Roberts, Woodward does not offer evidence regarding the chemical composition of the substance that was in the baggie recovered from his person during the June 2004 traffic stop. In fact, Woodward never has claimed that the substance was not methamphetamine, and he admitted to the arresting officer and at his plea hearing that the substance *was* methamphetamine. Under these circumstances, we conclude that the evidence of deficiencies at the crime lab does not satisfy the newly-discovered-evidence exception.

### *Interests of justice*

"To satisfy the interests-of-justice exception . . . a petitioner must satisfy two requirements: (1) that the petition 'is not frivolous,' and (2) that the petition 'is in the interests of justice.'" *Wallace v. State*, 820 N.W.2d 843, 849 (Minn. 2012) (quoting Minn. Stat. § 590.01, subd. 4(b)(5)). The supreme court has "establish[ed] that [it] will only apply the interests of justice exception in exceptional situations . . . [and] ha[s] identified a non-exclusive list of factors to be considered." *Gassler v. State*, 787 N.W.2d 575, 586 (Minn. 2010). Those factors include "the degree to which the party alleging error is at fault for that error, the degree of fault assigned to the party defending the alleged error, and whether some fundamental unfairness to the defendant needs to be addressed." *Id.* at 587.

In this case, as in *Roberts*, "[t]he alleged 'error' . . . is the post-plea discovery of deficient testing at the crime lab." *See* 856 N.W.2d at 293. But as discussed above,

7

Woodward could have investigated and challenged the foundational reliability and/or validity of the test results but failed to do so. Like Roberts, Woodward "does not allege that his attorney . . . refused his request to challenge the test results, or advised him not to challenge the results." *See id.* Neither does Woodward claim that the state intentionally withheld knowledge of deficiencies at the crime lab or impeded his investigation efforts. Woodward simply failed to discover evidence of crime-lab deficiencies before he pleaded guilty to the 2004 controlled-substance crime.

In *Roberts*, we stated that

> it is not fundamentally unfair to hold Roberts accountable for his choice to accept the state's scientific evidence at face value and resolve his case with a guilty plea in exchange for a reduced sentence.

> Nor is it necessary to act in the interests of justice to protect the integrity of the judicial proceedings. The post-plea discovery of problems at that crime lab does not stem from a flaw in the judicial process. It stems from Roberts's decision to waive his right to challenge the state's evidence against him. In hindsight, Roberts may regret his decision to plead guilty. But that is not a just reason to allow Roberts to pursue an untimely request for plea withdrawal.

*Id.* The reasoning in *Roberts* is applicable here. Fundamental fairness and the interests of justice do not require that Woodward be granted postconviction relief under the newly-discovered-evidence exception, and Woodward's post-plea discovery of evidence of crime-lab deficiencies does not satisfy the interests-of-justice exception. Woodward does not claim that any other statutory exception excuses the untimeliness of his petition for postconviction relief. We therefore conclude that the postconviction court did not abuse its discretion in determining that Woodward's petition was time-barred.

8

Because Woodward did not assert his claims in a timely postconviction petition, or in an untimely petition whose untimeliness is excused by a statutory exception, we do not consider them. *See Erickson*, 842 N.W.2d at 318 (stating that, "absent an applicable statutory exception, the time bar precludes all of [petitioner]'s claims," including his ineffective-assistance claim); *Lussier v. State*, 821 N.W.2d 581, 586 n.2 (Minn. 2012) (stating that "the timeliness requirements found in section 590.01 apply with equal force to [a] petition" for postconviction relief that asserts a claim for plea withdrawal as to a petition that does not assert such a claim); *cf. Miles v. State*, 840 N.W.2d 195, 200–01 (Minn. 2013) (distinguishing newly-discovered-evidence exception to two-year time limit for filing postconviction-relief petition from postconviction claim for new trial based on newly discovered evidence).

### Ineffective-assistance-of-postconviction-counsel claim

Woodward argues that his postconviction counsel provided ineffective assistance. He had a right to the assistance of counsel during his postconviction proceedings because he did not directly appeal his 2008 controlled-substance conviction. *See Deegan v. State*, 711 N.W.2d 89, 98 (Minn. 2006) ("[A] defendant's right to the assistance of counsel under Article I, section 6 of the Minnesota Constitution extends to one review of a criminal conviction, whether by direct appeal or a first review by postconviction proceeding."). Although Woodward properly asserts his ineffective-assistance-of-postconviction-counsel claim in this appeal from the denial of postconviction relief, *see Schleicher v. State*, 718 N.W.2d 440, 445 (Minn. 2006) (concluding that petitioner's "[ineffective-assistance-of-postconviction-counsel] claim [wa]s properly raised on appeal

9

from the denial of his first petition" for postconviction relief), we conclude that his claim fails on its merits.

"[Appellate courts] examine ineffective-assistance-of-counsel claims under the Supreme Court's two-prong test set forth in *Strickland v. Washington* . . . ." *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014). "To prevail under *Strickland*, [a petitioner] must show that (1) his postconviction counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lussier v. State*, 853 N.W.2d 149, 154 (Minn. 2014) (quotations omitted). "[Appellate courts] need not analyze both prongs if either one is determinative." *Vang*, 847 N.W.2d at 266.

Here, Woodward complains that his postconviction counsel "failed to obtain the plea hearing transcript in this case and thus failed to make a meaningful argument to the court for withdrawal of his guilty plea." But the postconviction court determined that Woodward's postconviction claims, including those relating to the validity of his guilty plea, are precluded by the time bar. Any failure of Woodward's postconviction counsel to "meaningful[ly] argu[e]" the merits of the plea-validity claims could not have impacted the postconviction court's determination that such claims are procedurally barred. We therefore conclude that no reasonable probability exists that any errors made by Woodward's postconviction counsel impacted the result of the postconviction proceeding. Accordingly, we reject Woodward's ineffective-assistance-of-postconviction-counsel claim.

*Denial of evidentiary hearing on postconviction petition*

Woodward asserts that the postconviction court erred by denying his request for an evidentiary hearing. A petitioner is not entitled to an evidentiary hearing on an untimely petition for postconviction relief unless he demonstrates that the untimeliness is excused by a statutory exception to the two-year time limit. *See Riley*, 819 N.W.2d at 168 (stating that because petition was time-barred under Minn. Stat. § 590.01, subd. 4(a), petitioner was not entitled to evidentiary hearing "unless he c[ould] show that he satisfie[d] one of the exceptions of subdivision 4(b)"). Because Woodward has failed to demonstrate the applicability of any such exception, the postconviction court did not abuse its discretion by summarily denying Woodward's petition.

**Affirmed.**