# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A14-0169

Phillip Anthony Roberts, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 17, 2014**
**Affirmed**
**Larkin, Judge**

Ramsey County District Court
File No. 62-K9-05-000811

Cathryn Middlebrook, Chief Appellate Public Defender, Carol Comp, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

## S Y L L A B U S

The newly-discovered-evidence exception to the statutory time bar to postconviction relief does not apply to an untimely petition seeking plea withdrawal based on allegedly deficient controlled-substance testing when the alleged deficiencies could have been ascertained by the exercise of due diligence within the time for filing a

timely petition and the new evidence does not clearly and convincingly establish that the petitioner is innocent.

**O P I N I O N**

**LARKIN**, Judge

Appellant pleaded guilty to second-degree sale of a controlled substance in 2005. In 2013, appellant petitioned for postconviction relief, seeking to withdraw his guilty plea. He based his request on information regarding testing deficiencies at the crime laboratory that tested the controlled substance in his case. The postconviction court concluded that appellant's petition was time-barred under Minn. Stat. § 590.01, subd. 4(a) (2012), and summarily denied the petition. Appellant challenges the postconviction court's ruling, arguing that his petition should have been considered under the newly-discovered-evidence and interests-of-justice exceptions to the statutory time bar. Because neither exception applies, we affirm the summary denial of postconviction relief.

**FACTS**

In March 2005, respondent State of Minnesota charged appellant Phillip Anthony Roberts with second-degree sale of a controlled substance under Minn. Stat. § 152.022, subd. 1(1) (2004) (three grams or more of a mixture containing cocaine). According to the complaint, a police officer conducted a routine traffic stop of a vehicle that Roberts was driving in November 2004. The officer detected a strong odor of marijuana coming from the vehicle, and he removed Roberts from the vehicle. As the officer escorted Roberts to his squad car, a small plastic bag fell out of Roberts's pant leg. When the officer attempted to place Roberts in the squad car, he ran from the officer. Immediate

attempts to locate Roberts were unsuccessful. An officer retrieved the plastic bag, which contained 49 individually wrapped "rocks" of suspected crack cocaine. The substance was submitted to the St. Paul Police Department Crime Laboratory (crime lab), which unwrapped, weighed, and tested 21 of the rocks. The 21 rocks weighed 4.16 grams, and each rock tested positive for cocaine.

In October 2005, Roberts appeared before the district court on the controlled-substance charge. He was represented by court-appointed counsel. Roberts did not challenge the state's evidence. Nor did he dispute that the substance was cocaine. Instead, he pleaded guilty.[1] The record contains Roberts's petition to plead guilty, which indicates that he pleaded guilty in exchange for the state's agreement to request a sentence 12 months less than the presumptive sentence under the Minnesota Sentencing Guidelines. In December 2005, the district court sentenced Roberts to serve 36 months in prison, noting that the sentence was a durational departure. Roberts did not appeal.

Nearly eight years later, in November 2013, Roberts petitioned for postconviction relief, seeking to withdraw his guilty plea. In his petition, Roberts outlined a number of problems at the crime lab that were revealed in a 2012 Dakota County controlled-substance case involving another defendant and in two subsequent audits of the crime lab. Specifically, Roberts alleged that the crime lab did not have a formal employee training program and that its testing protocols were inadequate to prevent contamination.

---

[1] We do not know the factual basis for Roberts's guilty plea because he did not provide this court a transcript of his plea hearing.

Although Roberts presented detailed information from the Dakota County case and the subsequent audits of the crime lab in his postconviction submissions, he did not specifically address the test results in his case. In fact, he did not claim that the substance was not cocaine. Instead, he asserted that "[t]here is no reason to believe the training methods or procedures followed by criminalists have changed between former laboratory employees and those most recently employed." He also asserted:

> The suspected controlled substances in [this] case were tested by the [crime lab] using GC/MS with the Drugs A program. . . . Drugs A is believed to be the precursor for the Drugs B Program . . . which "is not generally accepted in the scientific community . . . ." . . . If the Drugs A program operates functionally the same as the Drugs B program and this fact can be proved, it follows that the Drugs A program is not generally accepted in the scientific community.

Roberts argued that he was "entitled to withdraw his guilty plea, or at the very least [have] an evidentiary hearing, because of the newly discovered evidence involving the controlled substance testing performed by the [crime lab]." Roberts also argued that his "defense counsel provided ineffective assistance of counsel by failing to request the complete laboratory file." Lastly, Roberts argued that the newly-discovered-evidence and interests-of-justice exceptions to the two-year statutory time limit on the filing of post-conviction petitions applied.

The postconviction court denied Roberts's petition for relief without a hearing. It concluded that the petition was time-barred under Minn. Stat. § 590.01, subd. 4(a), and that neither of the relied-upon exceptions to the statutory time bar applied. The

4

postconviction court noted that Roberts "has never claimed (pre- or post-plea) that the rock cocaine was not in fact rock cocaine." Roberts appeals.

## ISSUE

Did the postconviction court abuse its discretion by summarily denying Roberts's petition for relief because it was untimely under Minn. Stat. § 590.01, subd. 4(a)?

## ANALYSIS

A person convicted of a crime who claims that the conviction violates his rights under the constitution or laws of the United States or Minnesota may petition for postconviction relief unless direct appellate relief is available. Minn. Stat. § 590.01, subd. 1 (2012). The petition must include "a statement of the facts and the grounds upon which the petition is based and the relief desired." Minn. Stat. § 590.02, subd. 1(1) (2012). A petitioner is entitled to a hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2012).

A petition for postconviction relief must be filed within two years of the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a). However, a petition filed after the two-year limit may be considered if it satisfies one of several statutory exceptions. *See id.*, subd. 4(b) (2012) (listing five exceptions). If an exception applies, the petition must be filed within two years of the date the claim arises. *Id.*, subd. 4(c) (2012). A claim arises when the petitioner "knew or should have known that the claim existed." *Sanchez v. State*, 816 N.W.2d 550, 552 (Minn. 2012).

5

A postconviction petitioner is not entitled to relief or an evidentiary hearing on an untimely petition unless he can demonstrate that "he satisfies one of the [statutory] exceptions . . . and that application of the exception is not time-barred." *Riley v. State*, 819 N.W.2d 162, 168 (Minn. 2012). If the petitioner does not demonstrate that an exception applies and that application of the exception is timely, the postconviction court may summarily deny the petition as untimely. *Id.* We review a summary denial of a postconviction petition for an abuse of discretion. *Id*. at 167. A postconviction court "abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted).

Roberts acknowledges that his petition was untimely under Minn. Stat. § 590.01, subd. 4(a). But he contends that the postconviction court should have considered his petition under the newly-discovered-evidence and interests-of-justice exceptions to the time bar. We address each exception in turn.

## I.

Under the newly-discovered-evidence exception, a court may hear an untimely petition for postconviction relief if (1) "the petitioner alleges the existence of newly discovered evidence"; (2) the evidence "could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition"; (3) "the evidence is not cumulative to evidence presented at trial"; (4) the evidence "is not for impeachment purposes"; and (5) the evidence "establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted." Minn. Stat. § 590.01,

6

subd. 4(b)(2). "All five criteria must be satisfied to obtain relief." *Riley*, 819 N.W.2d at 168. We focus on the second and fifth criteria.[2]

The complaint against Roberts alleged that the crime lab analyzed the substance in this case and identified it as cocaine. Roberts therefore knew that the charge against him was based on the crime lab's test results. He had access to the test results under the discovery rules. *See* Minn. R. Crim. P. 9.01 subd. 1(4) (2004) (requiring the prosecutor to disclose scientific tests and permit defense counsel to inspect and reproduce any scientific test results). He could have challenged the foundational reliability of the test results. *See* Minn. R. Crim. P. 11.02, .04 (2004) (allowing the defendant to demand an omnibus hearing on evidentiary issues); *Goeb v. Tharaldson*, 615 N.W.2d 800, 814 (Minn. 2000) (stating that "the particular scientific evidence in each case must be shown to have foundational reliability" and that the proponent of a scientific test must "establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability" (quotation omitted)). If Roberts was financially unable to obtain expert review of the test results, he could have requested public funds for that purpose. *See* Minn. Stat. § 611.21(a) (2004) (authorizing court-appointed counsel to file an application for expert services and the court to direct payment for such services by the county in which the prosecution originates).

---

[2] We assume without deciding that the newly-discovered-evidence exception is applicable to a request for postconviction relief in the form of plea withdrawal, even though the plain language of the statutory exception suggests that it only applies to convictions resulting from a trial. *See* Minn. Stat. § 590.01, subd. 4(b)(2) (stating that the exception applies only if "the evidence is not cumulative to evidence presented *at trial*" (emphasis added)).

7

Roberts does not claim that he made any effort to investigate the validity of the test results. Nor does he claim that anyone prevented him from doing so. Instead, he merely asserts that the deficiencies in the crime lab's procedures could not have been discovered with due diligence because no one had reason to suspect problems at the crime lab. That assertion is belied by Roberts's postconviction submissions, which show that the defendant in the 2012 Dakota County case discovered the deficiencies. Thus, Roberts has not demonstrated that the information regarding the crime lab could not have been discovered through the exercise of due diligence. *See Saiki v. State*, 375 N.W.2d 547, 549 (Minn. App. 1985) ("[Petitioner] has not demonstrated the newly discovered witness could not have been discovered earlier through the exercise of due diligence. The record does not show what efforts were made to locate the witness and merely contains a conclusory statement . . . in [the] petition for postconviction relief that 'Petitioner, after completing a search with due diligence, was unable to establish the identity and location of his missing witness prior to sentencing.'"), *review denied* (Minn. Dec. 19, 1985).

In addition, the evidence regarding the crime lab does not establish, under the clear-and-convincing standard, that Roberts is innocent. "[T]o prove a claim by clear and convincing evidence, a party's evidence should be unequivocal, intrinsically probable and credible, and free from frailties." *Riley*, 819 N.W.2d at 170 (quotation omitted). Roberts's new evidence regards the "sufficiency of the training, knowledge, and practices of laboratory employees" at the crime lab. But Roberts does not offer evidence regarding the chemical composition of the particular substance in his case. In fact, Roberts has

8

never claimed—in district court, during postconviction proceedings, or on appeal—that the substance was not cocaine.

Moreover, to satisfy the newly-discovered-evidence exception, the newly discovered evidence must establish "actual innocence." *Id.* "Actual innocence is more than an uncertainty about guilt. Instead, establishing actual innocence requires evidence that renders it more likely than not that no reasonable jury would convict." *Id*. The identity and weight of a suspected controlled substance may be proved directly with scientific evidence or, in certain situations, circumstantially with scientific or nonscientific evidence. *See State v. Olhausen*, 681 N.W.2d 21, 22, 28 (Minn. 2004) (holding that "non-scientific evidence presented at trial relating to the identity and weight of a controlled substance"—including defendant's and co-conspirator's statements regarding the identity and weight of the substance, along with a police officer's opinion as to the drug's authenticity, size, and weight—"was sufficient to sustain respondent's first-degree controlled substance crime conviction").

Here, there was nonscientific evidence of guilt. The complaint suggested that the arresting officer suspected that the substance was crack cocaine based on its appearance. The complaint also indicated that Roberts ran from the officer after the substance fell out of his pant leg, and flight is evidence of "consciousness of guilt." *Id*. at 29. These circumstances are fatal to Roberts's attempt to establish actual innocence based on speculation regarding the validity of the test results in his case.

In sum, Roberts has not met his burden to establish that the new evidence regarding the crime lab could not have been discovered with due diligence or that the

9

new evidence clearly and convincingly establishes his innocence. *See Scott v. State*, 788 N.W.2d 497, 502 (Minn. 2010) ("Under Minn. Stat. § 590.01, subd. 4(b)(2), the burden of presenting clear and convincing evidence of innocence is on the petitioner."). Thus, the postconviction court did not err by refusing to consider Roberts's untimely petition under the newly-discovered-evidence exception to the statutory time bar to postconviction relief.

## II.

Under the interests-of-justice exception, a court may hear an untimely petition for postconviction relief if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). "[Appellate courts] have only applied the interests of justice in exceptional situations." *Gassler v. State*, 787 N.W.2d 575, 586 (Minn. 2010). The supreme court has identified a "non-exclusive list of factors to be considered" to determine whether the interests-of-justice exception applies:

> [T]o satisfy that exception, a claim must have substantive merit and the defendant must not have deliberately and inexcusably failed to raise the issue on direct appeal. . . . [W]e [have] noted that in deciding whether to grant relief in the interests of justice, courts should weigh the degree to which the party alleging error is at fault for that error, the degree of fault assigned to the party defending the alleged error, and whether some fundamental unfairness to the defendant needs to be addressed. We have also acted in the interests of justice when necessary to protect the integrity of judicial proceedings. We have recognized, however, that under certain circumstances the *reversal* of a conviction may seriously affect the fairness, integrity, or public reputation of judicial proceedings.

*Id.* at 586-87 (citations omitted). "[T]he factors identified in *Gassler* do not form a rigid test," and "[d]ifferent factors may be dispositive in the unique circumstances of each case." *Carlton v. State*, 816 N.W.2d 590, 608 (Minn. 2012). In *Rickert v. State*, the supreme court considered "the degree of fault assigned to the party asserting the interests-of-justice claim." 795 N.W.2d 236, 242 (Minn. 2011).

The alleged "error" in this case is the post-plea discovery of deficient testing at the crime lab. As we discussed in section I, Roberts had the opportunity to investigate the validity of the test results in his case, and he declined to do so. Although Roberts claims that his attorney was ineffective for failing to investigate and discover the deficiencies, he does not allege that his attorney failed to discuss that option with him, refused his request to challenge the test results, or advised him not to challenge the results. Moreover, Roberts does not assert that the state knew of problems at the crime lab and failed to disclose them. Nor does Roberts assert that the state hindered or refused to cooperate with an attempt to investigate the test results. On this record, Roberts is at fault for his failure to discover the problems at the crime lab before he pleaded guilty.

Moreover, we discern no fundamental unfairness that needs to be addressed. We recognize that the information regarding the crime lab could have influenced Roberts's decision to waive his right to a trial and plead guilty. But it is not fundamentally unfair to hold Roberts accountable for his choice to accept the state's scientific evidence at face value and resolve his case with a guilty plea in exchange for a reduced sentence.

Nor is it necessary to act in the interests of justice to protect the integrity of the judicial proceedings. The post-plea discovery of problems at that crime lab does not stem

11

from a flaw in the judicial process. It stems from Roberts's decision to waive his right to challenge the state's evidence against him. In hindsight, Roberts may regret his decision to plead guilty. But that is not a just reason to allow Roberts to pursue an untimely request for plea withdrawal. Indeed, allowing Roberts to pursue his request to withdraw a guilty plea that is nine years old could negatively affect the integrity or public reputation of the judicial proceeding. *See Beltowski v. State*, 289 Minn. 215, 219, 183 N.W.2d 563, 566 (1971) ("A failure to require petitioner to adhere to a plea agreement properly negotiated and approved by the court would obviously have an adverse effect on the prosecution's employment of plea negotiations and plea agreements as an effective aid in the administration of criminal justice.").

Lastly, we are not satisfied that Roberts's petition is not frivolous. We are guided by the supreme court's decision in *Shorter v. State*, 511 N.W.2d 743 (Minn. 1994). In *Shorter*, the supreme court exercised its supervisory powers and reversed the denial of a postconviction request for plea withdrawal based on newly discovered evidence. *Id*. at 747. In granting relief, the supreme court found persuasive "the unusual fact that the Minneapolis police department reopened its investigation and was prepared to testify before the trial court that the original police investigation into Shorter's case was incomplete." *Id*. at 746. The supreme court noted that "the highly unusual facts of th[e] case render[ed] [Shorter's] plea suspect." *Id*. Unlike the circumstances in *Shorter*, the new information regarding the crime lab in this case does not specifically address the investigation into Roberts's case, and it does not render his guilty plea suspect.

12

For those reasons, the postconviction court did not err by refusing to consider Roberts's untimely petition under the interests-of-justice exception to the statutory time bar to postconviction relief.

## D E C I S I O N

Because Roberts's petition for postconviction relief was untimely under Minn. Stat. § 590.01, subd. 4(a), and neither the newly-discovered-evidence nor the interests-of-justice exception to the statutory time bar applies, the postconviction court did not abuse its discretion by summarily denying Roberts's petition for relief.

**Affirmed.**