*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1195**

Julius Antwon Coleman, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed May 2, 2016
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-CR-10-10784

Cathryn Middlebrook, Chief Appellate Public Defender, Carol Comp, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

        Considered and decided by Johnson, Presiding Judge; Worke, Judge; and Schellhas, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the denial of his postconviction-relief petition, which sought withdrawal of his guilty plea to fifth-degree controlled-substance crime based on deficiencies at the St. Paul Police Department Crime Laboratory. We affirm.

## FACTS

On September 29, 2010, police officers observed appellant Julius Antwon Coleman make at least three "hand-to-hand exchange[s]" outside a St. Paul residence. When officers approached Coleman, he attempted to flee on foot, and officers quickly apprehended him. Officers performed a search incident to arrest and found a small baggie containing "white crystal particles" and a glass pipe with residue in Coleman's pants pockets.

In a Mirandized statement, Coleman admitted that he is an addict who smokes methamphetamine frequently, that he had been at the residence "for a good portion of that day getting high," and that he had had "less than a gram of methamphetamine" on his person. The St. Paul Police Department Crime Laboratory (crime lab) tested particles in the baggie and residue in the pipe, which "tested positive for the presence of methamphetamine, with a total net weight of .13 grams."

Respondent State of Minnesota charged Coleman with fifth-degree controlled-substance crime (possession of methamphetamine). Coleman pleaded guilty as charged as part of a negotiated resolution of the controlled-substance offense and an unrelated weapons offense. On July 8, 2011, the district court sentenced Coleman to 24 months' imprisonment for fifth-degree controlled-substance crime as a subsequent controlled-

substance offense, to be served concurrently with a 60-month prison sentence for the weapons offense. Coleman did not file a direct appeal of his conviction or sentence.

At a subsequent consolidated hearing on the admissibility of evidence in three unrelated cases, defendants Matthew David Jensen, Daniel Ralph Sawyer, and Cecelia Rose Jackson presented evidence of serious training and process deficiencies at the crime lab (crime-lab deficiencies).[1] On July 17, 2014, Coleman petitioned the district court for postconviction relief. He alleged crime-lab deficiencies, sought withdrawal of his guilty plea to fifth-degree controlled-substance crime, claimed applicability of the newly-discovered-evidence and interests-of-justice exceptions to the two-year time limit for filing a petition, and requested an evidentiary hearing. The postconviction court concluded that Coleman had failed to show that either exception applied and summarily denied Coleman's petition. This appeal follows.

## DECISION

"[A] person convicted of a crime, who claims that . . . the conviction obtained or the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state . . . may commence a proceeding to secure relief . . . ." Minn. Stat. § 590.01, subd. 1 (2012). A postconviction petitioner is not entitled to an evidentiary hearing if "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2012). "[Appellate courts] review a postconviction court's decision to deny a petition,

_____

[1] The hearing began on July 16, 2012, and ended on May 3, 2013.

3

including its decision to deny the petition without granting an evidentiary hearing, for an abuse of discretion." *State v. Whitson*, 876 N.W.2d 297, 303 (Minn. 2016). "In determining whether the postconviction court abused its discretion, [appellate courts] review the [postconviction] court's factual findings for clear error and its legal conclusions de novo." *Id.*

"No petition for postconviction relief may be filed more than two years after . . . the entry of judgment of conviction or sentence if no direct appeal is filed[.]" Minn. Stat. § 590.01, subd. 4(a) (2012). But a postconviction petition that was filed outside of the two-year period is not time-barred if

> the petitioner alleges the existence of newly discovered evidence, including scientific evidence, that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition, and the evidence is not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted.

Minn. Stat. § 590.01, subd. 4(b)(2) (2012). Neither is such a petition time-barred if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5) (2012). "Any petition invoking [such] an exception must be filed within two years of the date the claim arises." Minn. Stat. § 590.01, subd. 4(c) (2012).

In his postconviction petition, Coleman argued that the evidence of crime-lab deficiencies provides five distinct grounds for plea-withdrawal relief: newly discovered evidence, *Brady* violations, due process violation, manifest injustice, and ineffective

4

assistance of counsel. On appeal, Coleman argues that the postconviction court abused its discretion in summarily denying his untimely petition, claiming that he has established the applicability of the newly-discovered-evidence and interests-of-justice exceptions to the two-year time limit and that, at a minimum, he is entitled to an evidentiary hearing.

*Newly-discovered-evidence exception*

The newly-discovered-evidence exception

> requires that the petitioner show that the evidence (1) is newly discovered; (2) could not have been ascertained by the exercise of due diligence by the petitioner or the petitioner's attorney within the 2-year time-bar for filing a petition; (3) is not cumulative to evidence presented at trial; (4) is not for impeachment purposes; and (5) establishes by the clear and convincing standard that petitioner is innocent of the offenses for which he was convicted.

*Riley v. State*, 819 N.W.2d 162, 168 (Minn. 2012). "All five criteria must be satisfied to obtain relief." *Id.* Neither the second nor the fifth criterion is satisfied in this case.

To begin, Coleman has not demonstrated that the evidence of crime-lab deficiencies could not have been ascertained by the exercise of due diligence by him or his counsel within two years of his conviction and sentence. The state alleged in its complaint that "[t]he suspected controlled substance was submitted to the Saint Paul Police Department Crime Laboratory and tested positive for the presence of methamphetamine, with a total net weight of .13 grams." The complaint thereby placed Coleman on notice that the state based the controlled-substance charge on the results of the crime-lab test. Coleman could have investigated and challenged the foundational reliability and/or validity of the test results. *See Roberts v. State*, 856 N.W.2d 287, 291 (Minn. App. 2014) (reaching same

5

conclusion on similar facts in reliance on, among other things, Minn. Stat. § 611.21(a) (2004), Minn. R. Crim. P. 9.01, subd. 1(4), 11.02, .04), *review denied* (Minn. Jan. 28, 2015). He chose to plead guilty rather than do so.

Moreover, the evidence of crime-lab deficiencies does not establish by a clear and convincing standard that Coleman is innocent of fifth-degree controlled-substance crime. "The innocence prong . . . requires more than mere 'uncertainty' about a petitioner's guilt. Under the clear and convincing standard, the proffered evidence must be unequivocal, intrinsically probable, and free from frailties." *Rhodes v. State*, 875 N.W.2d 779, 798 (Minn. 2016) (citation omitted).

In *Roberts*, we considered the innocence prong as follows:

> Roberts's new evidence regards the "sufficiency of the training, knowledge, and practices of laboratory employees" at the crime lab. But Roberts does not offer evidence regarding the chemical composition of the particular substance in his case. In fact, Roberts has never claimed—in district court, during postconviction proceedings, or on appeal—that the substance was not cocaine.
>
> . . . .
>
> [T]here was nonscientific evidence of guilt. The complaint suggested that the arresting officer suspected that the substance was crack cocaine based on its appearance. The complaint also indicated that Roberts ran from the officer after the substance fell out of his pant leg, and flight is evidence of "consciousness of guilt." These circumstances are fatal to Roberts's attempt to establish actual innocence based on speculation regarding the validity of the test results in his case.

856 N.W.2d at 291–92 (citation omitted). Like Roberts, Coleman attempted to flee from police officers, exhibiting consciousness of guilt. And like Roberts, Coleman did not offer evidence regarding the chemical composition of the substance that was in the baggie and pipe recovered from his pockets. Coleman never has claimed that the substance was not methamphetamine; in fact, he admitted in a police statement that the substance *was* methamphetamine. Finally, at his plea hearing, Coleman responded affirmatively when asked whether officers had found "some methamphetamine" in his pocket.

We conclude that the evidence of crime-lab deficiencies, tempered by the wealth of nonscientific evidence that Coleman possessed methamphetamine, cannot establish by the clear and convincing standard that Coleman is innocent of fifth-degree controlled-substance crime. *See id.* at 292 (stating that "[t]he identity and weight of a suspected controlled substance may be proved . . . , in certain situations, circumstantially with . . . nonscientific evidence," and concluding that evidence of crime-lab deficiencies did not establish Roberts's innocence in light of nonscientific evidence of his guilt). We therefore conclude that the postconviction court did not err by refusing to consider Coleman's untimely petition under the newly-discovered-evidence exception.

*Interests-of-justice exception*

"To satisfy the interests-of-justice exception, . . . a petitioner must satisfy two requirements: (1) that the petition is not frivolous, and (2) that the petition is in the interests of justice." *Wallace v. State*, 820 N.W.2d 843, 849 (Minn. 2012) (quotations omitted). Application of the exception "is reserved for exceptional cases." *Taylor v. State*, 874 N.W.2d 429, 431 (Minn. 2016) (quotation omitted).

7

> [I]n deciding whether to grant relief in the interests of justice, courts should weigh the degree to which the party alleging error is at fault for that error, the degree of fault assigned to the party defending the alleged error, and whether some fundamental unfairness to the defendant needs to be addressed. [Courts] have also acted in the interests of justice when necessary to protect the integrity of judicial proceedings.

*Gassler v. State*, 787 N.W.2d 575, 587 (Minn. 2010). "[T]he factors identified in *Gassler* do not form a rigid test," and "[d]ifferent factors may be dispositive in the unique circumstances of each case." *Carlton v. State*, 816 N.W.2d 590, 608 (Minn. 2012).

In this case, Coleman appears to argue that the interests-of-justice exception is satisfied in part because he has meritorious claims, specifically referring to three of the five substantive claims that he made in his postconviction petition and continues to pursue on appeal. But the interests-of-justice exception "relate[s] to the *reason* the petition was filed after the 2-year time limit in subdivision 4(a), not the *substantive claims* in the petition." *Sanchez v. State*, 816 N.W.2d 550, 557 (Minn. 2012). "In other words, the interests-of-justice exception is triggered by an injustice that *caused* the petitioner to miss the primary deadline in subdivision 4(a), not the *substance* of the petition." *Id.* Accordingly, we need not review the merits of Coleman's claims in order to consider the applicability of the interests-of-justice exception.

Coleman also argues that "it was the fault of the State that the information [regarding crime-lab deficiencies] was not disclosed earlier," that "[t]here is a fundamental unfairness that needs to be addressed" here, and that "th[is] court must apply th[e interests-of-justice] exception in order to protect the fairness, integrity, and public reputation of judicial proceedings." However, in *Roberts*, we reasoned that "Roberts had the opportunity to

investigate the validity of the test results in his case, and he declined to do so," which meant that he was "at fault for his failure to discover the problems at the crime lab before he pleaded guilty." 856 N.W.2d at 293. We further reasoned that there is "no fundamental unfairness that needs to be addressed" because "it is not fundamentally unfair to hold Roberts accountable for his choice to accept the state's scientific evidence at face value and resolve his case with a guilty plea in exchange for a reduced sentence." *Id.* We also reasoned that we did not need "to act in the interests of justice to protect the integrity of the judicial proceedings" because Roberts's post-plea discovery of the crime-lab deficiencies did "not stem from a flaw in the judicial process" but stemmed instead "from Roberts's decision to waive his right to challenge the state's evidence against him." *Id.* Our reasoning in *Roberts* applies with full force to this case, whose facts are remarkably similar to those before us in *Roberts*. We conclude that the postconviction court did not err by refusing to consider Coleman's untimely petition under the newly-discovered-evidence exception.

*Evidentiary hearing*

"A postconviction court may summarily deny a petition for postconviction relief when the petition is time barred." *Wayne v. State*, 866 N.W.2d 917, 919 (Minn. 2015) (quotation omitted). Thus, a postconviction petitioner is not entitled to an evidentiary hearing on an untimely petition unless he demonstrates the applicability of an exception to the two-year time limit. *Townsend v. State*, 867 N.W.2d 497, 500 (Minn. 2015). Coleman's petition was untimely, and he has failed to demonstrate the applicability of any exception;

9

consequently, we conclude that the postconviction court did not err in denying Coleman's request for an evidentiary hearing.

**Affirmed.**