*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2007
A15-2011**

Jamillo Dante Spight, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 18, 2016
Affirmed
Schellhas, Judge**

Ramsey County District Court
File Nos. 62-K3-01-003940, 62-CR-09-11693

Cathryn Middlebrook, Chief Appellate Public Defender, Carol Comp, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Bratvold, Judge.

**SCHELLHAS**, Judge

Appellant challenges the summary denial of his petitions for postconviction relief, arguing that he is entitled to withdraw his guilty pleas to third-degree controlled-substance crimes due to deficiencies at the St. Paul Police Department Crime Laboratory. We affirm.

**FACTS**

In October 2001, a St. Paul police officer working undercover indicated to appellant Jamillo Dante Spight that "he wanted to pay $40 for some crack cocaine," and Spight sold the officer "two chunks of what appeared to be crack cocaine." The St. Paul Police Department Crime Laboratory (crime lab) tested the substance sold and reported that "the test proved positive for the presence of cocaine." Respondent State of Minnesota charged Spight with third-degree controlled-substance crime (sale of cocaine). Spight pleaded guilty to that charge and to an unrelated charge of theft of a motor vehicle. During the plea hearing, Spight acknowledged that he "approached an individual in a car" and "gave that individual drugs in exchange for money" and that "the drugs that [he] sold . . . did test positive for cocaine." In February 2002, Spight received a stay of imposition and 90 days in jail for the controlled-substance crime. The stay was revoked in June 2002 due to a probation violation, and Spight was sentenced to 33 months' imprisonment.

In June 2009, a St. Paul police officer working undercover purchased "two rocks of suspected crack cocaine" from Spight. The crime lab tested the substance sold and reported that the rocks tested "positive for cocaine with net weights of .17 and .25 grams." The state charged Spight with third-degree controlled-substance crime (sale of cocaine). Spight

2

pleaded guilty to that charge in exchange for the dismissal of other charges. During the plea hearing, Spight acknowledged that a "person wanted to buy cocaine" from him and that he "agreed to sell [the person] some" and "gave th[e] person two rocks of suspected crack cocaine" in exchange for $40. Spight further acknowledged that he "ha[d] no reason to doubt" the crime lab's test results. In September 2009, Spight was sentenced to 39 months' imprisonment.

In July 2014, Spight petitioned for postconviction relief in each of his controlled-substance cases, based on evidence about training and procedural deficiencies at the crime lab (crime-lab deficiencies) that was presented at a consolidated hearing on the admissibility of evidence in three unrelated cases.[1] Spight raised claims of newly discovered evidence, a *Brady* violation, violation of his due-process rights, invalidity of his guilty pleas, and ineffective assistance of counsel, and he sought to withdraw his guilty pleas to the controlled-substance charges. In each petition, Spight claimed applicability of the newly-discovered-evidence and interests-of-justice exceptions to the two-year time limit for filing a postconviction petition and requested an evidentiary hearing. The district court summarily denied each petition as untimely.

This consolidated appeal follows.

## DECISION

> [A] person convicted of a crime, who claims that . . . the conviction obtained or the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state . . . may commence a

---

[1] The hearing began on July 16, 2012, and ended on May 3, 2013.

> proceeding to secure [postconviction] relief by filing a petition in the district court . . . .

Minn. Stat. § 590.01, subd. 1 (2012). The petitioner is entitled to a postconviction evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2012). An appellate court "review[s] a denial of a petition for postconviction relief, as well as the denial of an evidentiary hearing, for an abuse of discretion." *Rhodes v. State*, 875 N.W.2d 779, 786 (Minn. 2016). The appellate court "review[s] the postconviction court's legal conclusions de novo and its findings of fact for clear error." *Id.*

"No petition for postconviction relief may be filed more than two years after . . . the entry of judgment of conviction or sentence if no direct appeal is filed . . . ." Minn. Stat. § 590.01, subd. 4(a) (2012). Spight did not petition for postconviction relief within this two-year time limit but contends that two exceptions excuse the untimeliness of his petitions.

*Newly-discovered-evidence exception*

A postconviction petition is not time barred if (1) "the petitioner alleges the existence of newly discovered evidence," (2) the evidence "could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition," (3) "the evidence is not cumulative to evidence presented at trial," (4) the evidence "is not for impeachment purposes," and (5) the evidence "establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted." Minn. Stat.

§ 590.01, subd. 4 (2012). "All five criteria must be satisfied to obtain relief." *Riley v. State*, 819 N.W.2d 162, 168 (Minn. 2012). The second and fifth criteria are not satisfied in this case.

Spight has not demonstrated that he or his attorney could not have ascertained the evidence of crime-lab deficiencies by the exercise of due diligence within two years of his convictions and sentences. In each controlled-substance complaint, the state alleged that the crime lab had tested the substance sold and had reported that the substance tested positive for the presence of cocaine. The complaints therefore placed Spight on notice that the controlled-substance charges were based on the crime lab's test results. Spight could have investigated and challenged the foundational reliability and/or validity of the test results. *See Roberts v. State*, 856 N.W.2d 287, 291 (Minn. App. 2014) (reaching same conclusion on similar facts), *review denied* (Minn. Jan. 28, 2015); *see also* Minn. R. Crim. P. 9.01, subd. 1 (requiring prosecutor to disclose results or reports of scientific tests and allow defendant to conduct reasonable tests), 11.02 (entitling defendant to on-demand omnibus hearing on evidentiary issues). Spight chose to plead guilty rather than doing so.

Moreover, the evidence of crime-lab deficiencies does not establish by a clear-and-convincing standard that Spight is innocent of third-degree controlled-substance crime. "The innocence prong . . . requires more than mere uncertainty about a petitioner's guilt. Under the clear and convincing standard, the proffered evidence must be unequivocal, intrinsically probable, and free from frailties." *Rhodes*, 875 N.W.2d at 788 (quotation and citation omitted). In *Roberts*, we noted: "[Petitioner] does not offer evidence regarding the chemical composition of the particular substance in his case. In fact, [petitioner] has never

claimed—in district court, during postconviction proceedings, or on appeal—that the substance was not cocaine." 856 N.W.2d at 291–92. We also stated that "there was nonscientific evidence of [petitioner's] guilt," including that "[t]he complaint suggested that the arresting officer suspected that the substance was crack cocaine based on its appearance." *Id.* at 292. Similarly, Spight has not offered evidence that the substances sold were not cocaine and has not claimed that the substances were not cocaine. The complaint for the 2001 offense alleged that the undercover officer "indicated that he wanted . . . some crack cocaine" and that Spight sold the officer "two chunks of what appeared to be crack cocaine." The complaint for the 2009 offense alleged that Spight sold another undercover officer "two rocks of suspected crack cocaine." As in *Roberts*, "the evidence regarding the crime lab does not establish, under the clear-and-convincing standard, that [Spight] is innocent." *See id.* at 291.

We conclude that Spight has not met his burden to show that with due diligence he or his attorney could not have discovered the evidence of crime-lab deficiencies or his burden to show that the evidence clearly and convincingly establishes his innocence. The district court did not abuse its discretion by refusing to consider Spight's untimely petitions under the newly-discovered-evidence exception.

*Interests-of-justice exception*

A postconviction petition is not time barred if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4. This exception to the two-year time limit "is reserved for exceptional cases." *Taylor v. State*, 874 N.W.2d 429, 431 (Minn. 2016) (quotation

6

omitted). The supreme court "ha[s] identified a non-exclusive list of factors to be considered" when deciding whether to apply this exception and has explained:

> [T]o satisfy th[e] exception, a claim must have substantive merit and the defendant must not have deliberately and inexcusably failed to raise the issue on direct appeal. . . . [W]e [have] noted that in deciding whether to grant relief in the interests of justice, courts should weigh the degree to which the party alleging error is at fault for that error, the degree of fault assigned to the party defending the alleged error, and whether some fundamental unfairness to the defendant needs to be addressed. We have also acted in the interests of justice when necessary to protect the integrity of judicial proceedings.

*Gassler v. State*, 787 N.W.2d 575, 586–87 (Minn. 2010) (citation omitted); *see also Carlton v. State*, 816 N.W.2d 590, 608 (Minn. 2012) (stating that "the factors identified in *Gassler* do not form a rigid test" and that "[d]ifferent factors may be dispositive in the unique circumstances of each case").

Spight argues that "[t]here is a fundamental unfairness that needs to be addressed in th[is] case, and the court must apply th[e interests-of-justice] exception in order to protect the fairness, integrity, and public reputation of judicial proceedings." We rejected such arguments in *Roberts*, stating that petitioner was "at fault for his failure to discover the problems at the crime lab before he pleaded guilty" because he "had the opportunity to investigate the validity of the test results in his case, and he declined to do so." 856 N.W.2d at 293. We further stated that "it is not fundamentally unfair to hold [petitioner] accountable for his choice to accept the state's scientific evidence at face value and resolve his case with a guilty plea" and that "[t]he post-plea discovery of problems at th[e] crime lab d[id] not stem from a flaw in the judicial process" but "from [petitioner]'s decision to waive his

7

right to challenge the state's evidence against him." *Id.* Our reasoning in *Roberts* applies in this case as well. We therefore conclude that the district court did not abuse its discretion by refusing to consider Spight's untimely petitions under the interests-of-justice exception.

*Evidentiary hearing*

Spight contends that "[a]t a minimum, the district court should have held an evidentiary hearing" on each petition. But "[a] postconviction court may summarily deny a petition for postconviction relief when the petition is time barred." *Wayne v. State*, 866 N.W.2d 917, 919 (Minn. 2015) (quotation omitted). Because Spight did not file his postconviction petitions within the two-year time limit and has not demonstrated the applicability of an exception to the time limit, the district court did not abuse its discretion by denying Spight's requests for an evidentiary hearing.

**Affirmed.**