*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0078**
**A16-0080**

Lyndsey Rae Kidd, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 15, 2016**
**Affirmed**
**Halbrooks, Judge**

Ramsey County District Court
File No. 62-CR-11-568

Cathryn Middlebrook, Chief Appellate Public Defender, Carol Comp, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges her convictions of fifth-degree possession of a controlled substance and third-degree possession of a controlled substance, arguing that her petitions

for postconviction relief satisfy an exception to the two-year time limit under Minn. Stat. § 590.01 (2014). We affirm.

## FACTS

On January 7, 2011, officers observed appellant Lyndsey Rae Kidd arrive at and depart from an address suspected of being used for the sale of drugs. When Kidd departed, officers followed her and eventually observed her park and exit her vehicle and get into the passenger seat of another parked vehicle. Officers approached the occupied vehicle based on their belief that a drug deal was occurring. When asked, Kidd admitted to her involvement in the drug deal and advised officers that she had methamphetamine in her bra. When Kidd was later interviewed by officers, she admitted that she was there to give another person 1.75 grams of methamphetamine in exchange for a CD player. She also admitted to having the methamphetamine in her bra.

The state charged Kidd with fifth-degree possession of a controlled substance under Minn. Stat. § 152.025, subd. 2(a)(1) (2010). On March 10, 2011, Kidd pleaded guilty to fifth-degree possession of a controlled substance. The district court stayed execution of her sentence subject to five years supervised probation and 120 days in local confinement. While on probation, Kidd was again arrested for possession of a controlled substance. On October 10, 2011, the district court found Kidd in violation of her probation, sentenced her to 12 months and 1 day, and stayed that sentence in favor of continued probation and 90 days in local confinement.

While serving the 90 days, jail staff received a tip that Kidd was in possession of and using methamphetamine. Kidd was ordered to undergo a strip search, which

revealed a folded-up piece of paper in her mouth and a plastic bag in her genital area. The plastic bag contained 4.63 grams of methamphetamine. The state charged Kidd with third-degree possession of a controlled substance under Minn. Stat. § 152.023, subd. 2(a)(1) (2010). She pleaded guilty. On April 2, 2012, the district court found that Kidd violated her probation and revoked her stayed sentence.

On July 18, 2014, Kidd petitioned for postconviction relief for both convictions, citing testing deficiencies at the St. Paul Police Department Crime Lab (SPPDCL) that first came to light in *State v. Jensen*, No. 19HA-CR-09-3463 (Minn. Dist. Ct. July 16, 2012). Kidd asserted that her petitions are not time-barred and that she is entitled to postconviction relief on the grounds of newly discovered evidence, a *Brady* violation, a due-process violation, manifest injustice, and ineffective assistance of counsel. The postconviction court denied Kidd's petitions without an evidentiary hearing on the ground that they are untimely. This consolidated appeal follows.

## D E C I S I O N

Kidd argues that the petitions should not have been denied as untimely because they meet the newly-discovered-evidence and the interests-of-justice exceptions to the two-year time limit for filing a postconviction petition for relief. The postconviction court concluded that neither exception applies to Kidd's petitions. We review the summary denial of a petition for postconviction relief without an evidentiary hearing for an abuse of discretion. *Roberts v. State*, 856 N.W.2d 287, 290 (Minn. App. 2014), *review denied* (Minn. Jan. 28, 2015). "A postconviction court abuses its discretion when its

3

decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotations omitted).

Petitions for postconviction relief must be filed within two years of the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a). A petition filed after the two-year time limit may be considered if it satisfies one of five statutory exceptions, unless the petition is filed two years after the date the claim based on the exception arises. *Id.*, subd. 4(b)-(c). If a postconviction petitioner fails to satisfy one of the statutory exceptions, the petitioner is not entitled to relief or an evidentiary hearing. *Roberts*, 856 N.W.2d at 290.

**The Newly-Discovered-Evidence Exception**

A postconviction court may hear an untimely postconviction petition under the newly-discovered-evidence exception if (1) the petitioner alleges the existence of newly discovered evidence, (2) the evidence could not have been discovered through the exercise of due diligence by the petitioner or her attorney within the two-year time limit, (3) the evidence is not cumulative, (4) the evidence is not solely for impeachment, and (5) the evidence demonstrates the petitioner's innocence by clear and convincing evidence. *Id.* To meet the exception, all five criteria must be satisfied. *Id.*

In *Roberts*, we rejected the argument that the SPPDCL's testing deficiencies discovered in 2012 meet the requirements of the newly-discovered-evidence exception because Roberts failed to show that he could not have discovered the deficiencies through the exercise of due diligence and because the deficiencies did not establish by clear and

4

convincing evidence that he was innocent.  *Id.* at 291-92.  Kidd's arguments fail for the same reasons.

Both criminal complaints filed against Kidd alleged that the crime lab tested the substances found on Kidd's person to determine if they contained methamphetamine. Kidd, like Roberts, knew that the charges were based on the test results, and she had access to them under the applicable discovery rules.  *See* Minn. R. Crim. P. 9.01, subd. 1(4).  Kidd argues that the evidence could not have been discovered through due diligence because the lab deficiencies were not discovered until 2012.  But we addressed the same argument in *Roberts*, concluding that the fact that defense counsel discovered the deficiencies in 2012 demonstrated that they could have been discovered earlier had a defendant challenged the lab results and procedures.  856 N.W.2d at 291.  Like Roberts, Kidd failed to show that she made any effort to challenge the test results or was prevented from doing so.

Kidd attempts to distinguish *Roberts* on the basis of an affidavit filed in her case that she argues establishes that the crime-lab deficiencies could not have been discovered earlier through due diligence.  But the affidavit does not distinguish this case from *Roberts*.  In her affidavit, Lauri Traub, one of the attorneys who discovered the issues with the SPPDCL, outlines how she learned about the lab's deficiencies and when she believes they started.  Nothing in the affidavit alleges a fact that shows that it was not possible to discover the deficiencies before 2012 through the exercise of due diligence.

Further, Kidd has not shown that the evidence would have proved under a clear and convincing standard that she is innocent.  In *Roberts*, we held that the sufficiency of

5

the training, knowledge, and the practices of the SPPDCL alone were insufficient to prove by clear and convincing evidence that Roberts was innocent. *Id.* Kidd, like Roberts, does not offer any evidence regarding the chemical composition of the substances confiscated by the police. And Kidd, similar to Roberts, has never claimed that the substance was not methamphetamine. To the contrary, Kidd admitted that the substance was methamphetamine during the plea hearings, and it was her admissions that were used to convict her—not the test results.

**The Interests-of-Justice Exception**

"Under the interests-of-justice exception, a court may hear an untimely petition for postconviction relief if 'the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice.'" *Id.* at 292 (quoting Minn. Stat. § 590.01, subd. 4(b)(5) (2012)). The exception only applies when the petition has "substantive merit" and the petitioner has not "deliberately and inexcusably failed to raise the issue on direct appeal." *Id.* (quotation omitted).

We need not consider Kidd's argument that her petitions have substantive merit based on newly discovered evidence, a *Brady* violation, or a violation of due process because a counseled guilty plea "has traditionally operated, in Minnesota and in other jurisdictions, as a waiver of all non-jurisdictional defects arising prior to the entry of the plea." *State v. Ford*, 397 N.W.2d 875, 878 (Minn. 1986) (citing *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn. 1980)). Kidd pleaded guilty to fifth-degree possession of a controlled substance on March 10, 2011 and third-degree possession of a controlled substance on February 17, 2012. She was represented by counsel both times and signed

plea petitions acknowledging that she had the opportunity to discuss her defenses with her attorneys, was giving up the right to challenge the state's evidence through cross-examination or impeachment, and was not claiming that she was innocent. Because Kidd waived her evidentiary and procedural challenges when she entered into counseled guilty pleas, we need only address whether Kidd is entitled to withdraw her guilty pleas on the basis of manifest injustice or ineffective assistance of counsel.

Minn. R. Crim. P. 15.05, subd. 1 provides that a "court must allow a defendant to withdraw a guilty plea upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." If a guilty plea is not accurate, voluntary, and intelligent, then a manifest injustice occurs. *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). Kidd argues that her pleas were not accurate, voluntary, or intelligent. We disagree.

For a guilty plea to be accurate, a proper factual basis must be established. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). With regard to her March 2011 conviction, Kidd pleaded guilty to fifth-degree possession of a controlled substance. A person is guilty of fifth-degree possession of a controlled substance under Minn. Stat. § 152.025, subd. 2(a)(1), if "the person unlawfully possesses one or more mixtures containing a controlled substance classified in Schedule I, II, III, or IV, except a small amount of marijuana." Methamphetamine is classified as a schedule II drug, and Kidd admitted at her plea hearing to possessing methamphetamine on her person when officers approached her on January 7, 2011. *See* Minn. Stat. § 152.02, subd. 3(3)(b) (2010).

With regard to her February 2012 conviction, Kidd pleaded guilty to third-degree possession of a controlled substance. A person is guilty of third-degree possession of a controlled substance under Minn. Stat. § 152.023, subd. 2(a)(1) if "on more or more occasions within a 90-day period the person unlawfully possesses one or more mixtures of a total weight of three grams or more containing cocaine, heroin, or methamphetamine." Kidd admitted at her plea hearing to possessing 4.63 grams of methamphetamine on her person while incarcerated at the Ramsey County Workhouse. Those admissions provide proper factual bases to establish the elements of the crimes that Kidd was convicted of.

Courts assess whether a plea is voluntary by considering all relevant circumstances to determine if the defendant pleaded guilty due to improper pressure or coercion. *State v. Raleigh*, 778 N.W.2d 90, 96 (Minn. 2010). Kidd did not challenge the lab test results and did not dispute that the substances obtained by the police contained methamphetamine. She does not claim that she was pressured or coerced into not testing the results. To the contrary, the plea agreements that Kidd signed and acknowledged at the plea hearings stated that no one threatened her or made her any promises to obtain a guilty plea other than those stated in the agreement or during the plea hearing. Those facts are sufficient to show that Kidd's pleas were voluntary.

For a guilty plea to be intelligent, the defendant must understand "the charges against [her], the rights [she] is waiving, and the consequences of [her] plea." *Id.* "'Consequences' refers to a plea's direct consequences, namely the maximum sentence and fine." *Id.* (quotation omitted). Kidd claims that she did not understand the scope of

8

her right to challenge the evidence before she waived it. But Kidd signed plea petitions in which she acknowledged that she understood that she was giving up the right to a jury trial, the right to question the state's evidence by cross-examining its witnesses, and the ability to call her own witnesses to testify. She testified at the plea hearings in response to questions from her attorney that she understood those rights. Kidd cannot now claim that she did not understand her right to challenge the evidence because she has discovered that there may have been deficiencies in SPPDCL's procedures when she never contested whether the substance found on her person was methamphetamine. We conclude that her guilty plea was made knowingly, voluntarily, and intelligently.

In order for Kidd to prevail on her argument that she received ineffective assistance of counsel, she must demonstrate that her counsel's "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064 (1984). She must also establish that she was prejudiced by showing that there exists a "reasonable probability" that "but for the alleged errors of [her] counsel, [she] would not have pleaded guilty." *Ecker*, 524 N.W.2d at 718. To meet the objective standard of reasonableness, an attorney must exercise the "customary skills and diligence that a reasonably competent attorney would [exercise] under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266-67 (Minn. 2014) (quotation omitted). We presume that a trial counsel's performance was reasonable. *Id.* at 266.

Kidd contends that her representation was not reasonable because her attorneys did not demand and review the SPPDCL files. Like Roberts, Kidd does not allege that her attorneys failed to discuss this option with her or advised her not to challenge the test

results. She also fails to provide evidence that it was customary practice of defense attorneys in 2011-2012 to request SPPDCL files for cases involving controlled substances. To the contrary, Traub's affidavit indicates that understanding the deficiencies of the crime lab went beyond her standard training as a public defender. Thus, Kidd has failed to show that her attorneys' representation was unreasonable. We conclude that the postconviction court acted within its discretion by denying Kidd's postconviction petition without an evidentiary hearing.

**Affirmed.**