Adrian Dominic RILEY, a/k/a
Amiri Abdul Rasheed–El,
petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A11–1809.

Supreme Court of Minnesota.

Aug. 15, 2012.

Adrian Dominic Riley, a/k/a Amiri Abdul Rasheed–El, Rush City, MN, pro se.

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, MN; and Mark Metz, Carver County Attorney, Chaska, MN, for respondent.

## OPINION

DIETZEN, Justice.

This appeal presents the issues of whether the postconviction court erred when it summarily denied appellant Adrian Dominic Riley's second postconviction petition without an evidentiary hearing, and whether the postconviction court erred when it denied Riley's motion for additional fingerprint and forensic DNA testing. Riley was found guilty by a Carver County jury of three counts of first-degree murder and three counts of second-degree murder arising out of the 1995 shooting deaths of Troy Tholkes, James M. Walters, and Treesa Woods. The district court entered convictions on the three counts of first-degree murder and imposed three consecutive life sentences. We affirmed Riley's convictions on direct appeal. *State v. Riley (Riley I)*, 568 N.W.2d 518, 520 (Minn. 1997). Because we conclude that Riley's petition was time-barred as a matter of law and that the motion was not supported by adequate proof, we affirm the postconviction court.

On the afternoon of May 23, 1995, Troy Tholkes, James M. Walters, and Treesa Woods[1] were murdered at a farmhouse in Watertown Township. *Riley I*, 568 N.W.2d at 520. The night before the murders, two of the victims, Tholkes and Walters, took Tholkes' 1989 blue Chevrolet Beretta to get cash for drugs and then gathered with Riley at a Minneapolis residence. *Id.* Those present included Riley, who is black,[2] and Walters and Tholkes, who are white. *Id.* Also present was Sherri Murphy, who was a tenant at the Minneapolis residence. *Id.* The morning of the murders, James Greenwood, who lived at the Watertown farmhouse, dressed for work at about 8:45 a.m. *Id.* He noticed Tholkes lying on the couch, and a black man on the floor under a blanket. *Id.* Greenwood also smelled the odor of crack cocaine emanating from the room of his housemate, Walters. *Id.* As Greenwood left for work, he saw Tholkes' Beretta with a primer-colored bumper parked outside the farmhouse. *Id.*

1. The relevant facts of this case are set forth in detail in this court's opinion on direct appeal. *Riley I*, 568 N.W.2d 518. Only those facts relevant to Riley's claims on appeal from the denial of his postconviction petition are repeated here.

2. Riley's race is relevant not only because several eyewitnesses saw a black man in the area of the farmhouse before and after the murder, but also because the alleged newly discovered alternative perpetrator, Joseph Papasodora, is *not* black.

In mid-morning, a City of Watertown employee gave directions to a white man and a black man who had asked where they could buy ammunition. *Id.* Later that afternoon, a man working near the farmhouse heard gunshots. *Id.* at 521. A few hours later, a witness encountered a black man in a car at the intersection of Willow and Watertown Road, in Orono, who was asking for directions to Minneapolis. *Id.* Soon after, another witness spotted a black man in a blue Beretta in Orono who asked for directions to Highway 12 in order to return to Minneapolis. *Id.*

When Greenwood arrived at the farmhouse that evening, he discovered Woods' body in Walters' upstairs bedroom, and called 911. *Id.* After arriving at the scene, police found the bodies of Walters and Tholkes outside the house. *Id.* All three had died from gunshot wounds. *Id.*

The police investigated the area near where the bodies were located. They found a target attached to a tree near the bodies of Walters and Tholkes that was riddled with bullets. *Id.* The police also found recently discharged 9 mm shell casings nearby. *Id.* Inside the farmhouse, the police found a box for a Smith & Wesson 9 mm handgun on the floor of the bedroom where the police discovered Woods' body. *Id.* The box had been opened and the gun was missing. *Id.* Police eventually concluded that at least four people had been alive at the farmhouse on the morning of the murder—Greenwood, Walters, Tholkes, and an unidentified black man. *Id.* Of the four, Greenwood had been interrogated, and Walters and Tholkes were dead. Therefore, the police focused their investigation on the unidentified black man. *Id.*

Subsequently, Sherri Murphy told police that she had seen Riley and others in her kitchen on the morning of the murders. *Id.* When police arrested Riley 2 days later at the house where Riley was staying, they recovered a Smith & Wesson 9 mm handgun at the house. *Id.*

Ultimately, a grand jury indicted Riley on three counts of first-degree murder and three counts of second-degree murder. Riley pleaded not guilty and demanded a jury trial.

At trial, the State presented evidence consistent with the facts outlined above. Additionally, the State presented forensic testimony that a gunshot residue test of Greenwood's hands was inconclusive, but Riley's test was positive. *Id.* at 523. Riley's fingerprints were found at the crime scene on a red plastic cup from the kitchen, the stereo cabinet in the living room, and a beer bottle recovered from the yard near the bodies of Tholkes and Walters. *Id.* A BCA forensic scientist testified that the prints on the glass of the stereo cabinet might have been left within a "period of days" before they were lifted by the police. *Id.* Another expert testified that two latent fingerprints recovered from the pistol came from Riley. *Id.* A ballistics expert testified that shell casings recovered at the scene were fired from the 9 mm Smith & Wesson pistol that was recovered at the house where Riley was staying. *Id.* The expert could not, however, determine whether bullet fragments recovered from the bodies of Tholkes, Woods, and Walters came from the alleged murder weapon. *Id.*

The jury found Riley guilty on all six counts. The district court entered convictions on the three counts of first-degree murder and imposed three consecutive life sentences. We affirmed Riley's convictions on direct appeal.[3] *Riley I,* 568 N.W.2d at 520.

---

**3.** On direct appeal, Riley raised five issues

questioning whether: (1) his warrantless ar-

In 2007, Riley filed a postconviction motion for additional fingerprint and forensic testing. Riley, however, abandoned the motion before the postconviction court could issue an order. Two years later, Riley filed a petition for postconviction relief, which the postconviction court summarily denied without an evidentiary hearing.[4] We affirmed the denial of Riley's petition, concluding that the petition was time-barred and that Riley failed to satisfy any of the time-bar exceptions set forth in Minn.Stat. § 590.01, subd. 4 (2010). *Riley v. State (Riley II)*, 792 N.W.2d 831, 834 (2011).

In 2011, Riley filed his second petition for postconviction relief, claiming that he was entitled to an evidentiary hearing or a new trial based on newly discovered evidence. Riley also brought a motion for additional fingerprint and forensic DNA testing. To support his petition and motion, Riley relied on affidavits from Joel Demond White, Landry Scott Goodwin, and himself. Riley asserted that Joseph Papasodora, who is now deceased, confessed to shooting the three victims. The postconviction court summarily denied the petition without an evidentiary hearing, concluding that the petition was time-barred by Minn.Stat. § 590.01, subd. 4. Further, the court concluded that the motion for fingerprint and forensic DNA testing did not satisfy the requirements of Minn.Stat. § 590.01, subd. 1a (2010).

## I.

On appeal, Riley argues that the postconviction court erred in two ways when it summarily denied his petition without an evidentiary hearing. First, he argues that the court erred in concluding that his petition was time-barred under Minn.Stat. § 590.01, subd. 4 (2010), or if the petition was time-barred, that it failed to satisfy either the newly discovered evidence exception under subdivision 4(b)(2), or the interests of justice exception under subdivision 4(b)(5).[5] Additionally, he argues that the court erred in concluding that his

---

·⸱ rest was supported by probable cause; (2) the "fruits" of his arrest ought to have been suppressed; (3) his statement to the police should have been suppressed as a product of "trickery and deceit"; (4) a ballistics expert ought to have been permitted to state his opinion to a "reasonable degree of scientific certainty"; and (5) it was error to exclude evidence that Riley was willing to take a polygraph test. *Riley I*, 568 N.W.2d at 520.

4. In his first postconviction petition, Riley alleged: (1) the indictment violated the Double Jeopardy Clause of the United States Constitution, Minn.Stat. § 609.04, subd. 1 (2010) (prohibition on conviction for a lesser-included offense), and Minn.Stat. § 609.035 (2010) (single behavioral-incident rule); (2) his arrest was not supported by probable cause; (3) there was insufficient evidence to support the verdict; (4) the testimony of the ballistics expert should have been excluded under the rules of evidence; and (5) the district court erred in admitting hearsay evidence unsupported by corroboration or other physical evidence. *Riley II*, 792 N.W.2d at 833.

5. Riley also claims for the first time on appeal that he suffered from dyslexia in the past, and therefore the postconviction court erred by not hearing his second postconviction petition pursuant to Minn.Stat. § 590.01, subd. 4(b)(1) (allowing a postconviction court to hear an untimely petition if "the petitioner establishes that a physical disability or mental disease precluded a timely assertion of the [postconviction] claim"). After this appeal was considered by the court, Riley filed a Notice of Stipulation and Application for Remand to District Court for Expansion of the District Court's Record, in which he also refers to his dyslexia. We need not discuss this claim because Riley failed to raise it in the postconviction court. *See State v. Roby*, 463 N.W.2d 506, 508 (Minn.1990) (explaining that we generally do not decide issues that are raised for the first time on appeal). We note, however, that neither the second postconviction petition nor Riley's supporting affidavit allege that he has suffered from dyslexia.

motion for fingerprint and forensic DNA testing failed to satisfy the requirements of section 590.01, subdivision 1a. We first consider the issues related to Riley's postconviction petition and then discuss Riley's motion for additional fingerprint and forensic DNA testing.

Generally, a person convicted of a crime who claims the conviction violates his rights under the constitution or laws of the United States or Minnesota may file a petition for postconviction relief. Minn. Stat. § 590.01, subd. 1 (2010). Moreover, a petitioner is entitled to a hearing on the petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2010).

 We review a denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion. *Davis v. State*, 784 N.W.2d 387, 390 (Minn.2010); *Doppler v. State*, 771 N.W.2d 867, 871 (Minn.2009). A postconviction court "abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley II*, 792 N.W.2d at 833. We review a postconviction court's factual determinations under a clearly erroneous standard, and do not reverse those determinations unless they are not factually supported by the record. *Scherf v. State*, 788 N.W.2d 504, 507 (Minn.2010). But we review the court's legal conclusions de novo. *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007).

 An evidentiary hearing on a petition is mandated whenever "material facts are in dispute which have not been resolved in the proceedings resulting in conviction and which must be resolved in order to determine the issues raised on the merits." *State ex rel. Roy v. Tahash*, 277 Minn. 238, 244, 152 N.W.2d 301, 305 (1967). A court abuses its discretion when it does not order an evidentiary hearing in such a circumstance. *Opsahl v. State*, 677 N.W.2d 414, 423–24 (Minn.2004) (concluding that the postconviction court abused its discretion when it misapplied Minn.Stat. § 590.04 "[b]y concluding that the recantations were unreliable without first evaluating the credibility of the witnesses at an evidentiary hearing"). When an evidentiary hearing on the petition is not mandated under Minn.Stat. § 590.04, subd. 1, the court may order such a hearing if it deems it appropriate. *State ex rel. Roy*, 277 Minn. at 244, 152 N.W.2d at 305. A decision to hold or not hold such a hearing in such a circumstance is also reviewed for an abuse of discretion. *Doppler*, 771 N.W.2d at 871.

Essentially, Minn.Stat. § 590.04, subd. 1 contemplates a two-step analysis. *Id.* Under the first step, the postconviction court must determine whether the facts considered in the light most favorable to the petition, together with the arguments presented by the parties, "conclusively show" that the petitioner is not entitled to relief. *Id.* If the court concludes there are no material facts in dispute that preclude dismissal, and the State is entitled to dismissal of the petition as a matter of law, the court is not required to hold an evidentiary hearing.[6] Alternatively, if the court con-

---

**6.** We have previously held that Minn.Stat. § 590.04 does not require an evidentiary hearing (1) when "the petitioner and state agree and stipulate to the material facts," (2) when "the petition and the responsive pleading ... clearly raise no factual dispute and the issues present only questions of law," and

(3) when "any disputed facts essential to a determination of petitioner's claims on the merits have, after a full and fair hearing, been reliably found by the sentencing court." *State ex rel. Roy*, 277 Minn. at 244–45, 152 N.W.2d at 305–06.

cludes material facts are in dispute which have not been resolved in the proceedings resulting in conviction and which must be resolved in order to determine the issues raised on the merits, the court must proceed to the second step, which is to schedule the petition for a hearing. *Id.*, subds. 1, 3.

Riley filed his second petition in 2011; however, the two-year time-bar to file a petition expired on August 1, 2007. *See Riley II,* 792 N.W.2d at 833–34 (holding Riley's petition time-barred on August 1, 2007). Consequently, Riley's second petition is time-barred under subdivision 4(a), and he is not entitled to relief, or an evidentiary hearing under section 590.04, unless he can show that he satisfies one of the exceptions of subdivision 4(b), and that application of the exception is not time-barred by subdivision 4(c). Riley argues that he satisfies the newly discovered evidence and interests of justice exceptions in subdivision 4(b)(2) and (5). We will address each argument in turn.

### A.

■ Riley argues that the facts alleged in his petition and affidavits present material questions of fact regarding whether he is entitled to postconviction relief under the newly discovered evidence exception to the 2–year time-bar. Under the "newly discovered evidence" exception to the 2–year time-bar, a court may hear a petition if the petitioner alleges:

> the existence of newly discovered evidence, including scientific evidence, that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a post-conviction petition, and the evidence is not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convinc-

ing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted.

Minn.Stat. § 590.01, subd. 4(b)(2); *see Scott v. State,* 788 N.W.2d 497, 501–02 (Minn.2010). Essentially, this exception requires that the petitioner show that the evidence (1) is newly discovered; (2) could not have been ascertained by the exercise of due diligence by the petitioner or the petitioner's attorney within the 2–year time-bar for filing a petition; (3) is not cumulative to evidence presented at trial; (4) is not for impeachment purposes; and (5) establishes by the clear and convincing standard that petitioner is innocent of the offenses for which he was convicted. *Scott,* 788 N.W.2d at 502. All five criteria must be satisfied to obtain relief. *See id.*

■ Riley submitted affidavits from Joel Demond White, Landry Scott Goodwin, and himself to support the petition. Riley states in his affidavit that both White and Goodwin were in prison at MCF–Rush City with him, and separately approached him and offered to help him pursue his appeal. White states in his affidavit that Joseph Papasodora told him on the evening of May 24, 1995, that "he had shot three people in the process of [a] robbery." White paged Riley that night, and they later met, and White told Riley what Papasodora had told him. White stated that he did not testify at Riley's trial because he was afraid and left town.

Goodwin states in his affidavit that Papasodora, who he lived with for a long time, "came home and told me to help him get rid of some clothes" that had "blood-stains on them, so we burned them in our back yard," and then explained that he had done a robbery for James Greenwood. Later when he saw a television story involving the murders of Tholkes, Walters, and Woods, Papasodora "admitted to me that he was the person who killed all three

victims." He stated that Papasodora "threatened [him]," so he did not say anything.

■ Even when viewed in a light most favorable to Riley, the alleged facts fail as a matter of law to satisfy the newly discovered evidence exception to the 2–year time-bar for several reasons. First, the alleged facts do not satisfy the first prong of the newly discovered evidence exception, which requires that the evidence be "newly discovered." When a defendant has knowledge of the expected testimony at the time of trial, the testimony fails the legal test for newly discovered evidence. *State v. Hawes*, 801 N.W.2d 659, 675–76 (Minn.2011). In his affidavit, White alleges that on the night of the murders he informed Riley that Papasodora told White that "he had shot three people in the process of [a] robbery." Admittedly, the truth of White's allegation presents a question of fact that necessarily involves a credibility determination. Nevertheless, this question of fact is not material in Riley's case. Even if the fact question is resolved in Riley's favor, he is legally entitled to no relief under the newly discovered evidence exception to the 2–year time-bar because he knew of White's expected testimony at the time of trial and therefore White's allegation is, as a matter of law, not "newly discovered."

Second, testimony by White and Goodwin regarding the Papasodora confessions alleged in their affidavits is inadmissible hearsay. We acknowledge that the submission of "an affidavit containing hearsay does not preclude a postconviction court from granting an evidentiary hearing" because the declarant might personally appear at the evidentiary hearing or the postconviction court might conclude that the testimony is admissible under a hearsay exception. *Dobbins v. State*, 788 N.W.2d 719, 736–37 (Minn.2010). Never-theless, a postconviction court need not hold an evidentiary hearing when the declarant is deceased and the petitioner as a matter of law cannot establish a hearsay exception. *Roby v. State*, 808 N.W.2d 20, 28 (Minn.2011).

Here, Papasodora is deceased and the only possible hearsay exception in this case is the statement against interest exception. Minn. R. Evid. 804(b)(3).

■ Rule 804(b)(3) provides:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

*Id.* The purpose of the corroborating evidence requirement is to protect against the possibility that a statement will be fabricated to exculpate the accused. *State v. Hurd*, 763 N.W.2d 17, 35 (Minn.2009); accord *United States v. Barone*, 114 F.3d 1284, 1301 (1st Cir.1997) ("[T]he corroboration requirement 'should be construed in such a manner as to effectuate its purpose of circumventing fabrication.'") (quoting Fed.R.Evid. 804(b)(3), advisory committee's note). We have observed "[it is] our long-standing, clear rule that the statement-against-interest exception applies to exculpatory statements only where there is evidence corroborating the statement." *Hurd*, 763 N.W.2d at 35. Thus, our inquiry must examine whether there is independent corroborating evidence that "clearly

indicate[s] the trustworthiness of the statement." Minn. R. Evid. 804(b)(3).

The facts alleged do not provide independent corroborating evidence that clearly indicates the trustworthiness of Papasodora's alleged confessions. The supporting affidavits do not allege any facts that independently connect Papasodora to the victims, farmhouse, or handgun.[7] Moreover, none of the eyewitnesses saw a person matching Papasodora's description at any stage of the murder or its aftermath, and there are no other objective circumstances corroborating Papasodora's presence at the crime scene.

 Third, the alleged facts do not legally satisfy the fifth prong of the newly discovered evidence exception, which requires Riley to establish by clear and convincing evidence that he "is innocent of the offense or offenses for which [he] was convicted," Minn.Stat. § 590.01, subd. 4(b)(2). "[T]o prove a claim by clear and convincing evidence, a party's evidence should be unequivocal, intrinsically probable and credible, and free from frailties." *Gassler v. State*, 787 N.W.2d 575, 583 (Minn.2010). Actual innocence is more than an uncertainty about guilt. Instead, establishing actual innocence requires evidence that renders it more likely than not that no reasonable jury would convict. *Accord Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *cf. Herrera v. Collins*, 506 U.S. 390, 418–19, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (explaining that affidavits filed 10 years after the event did not satisfy the high threshold of actual innocence test).

Riley has failed to present evidence that establishes by clear and convincing evidence his actual innocence of the offenses for which he was convicted. The proposed testimony of White and Goodwin is not sufficient to counter the extensive evidence establishing Riley's presence at the scene of the crime and participation in the murder. As discussed above, there is no other evidence corroborating Papasodora's involvement in the murders. The consistent eyewitness testimony was that the perpetrator was a black male. In addition, Riley's fingerprints were discovered at the scene of the murder and on the Smith & Wesson 9 mm handgun. Thus, the alleged facts do not legally establish by clear and convincing evidence that Riley is innocent of the murders of which he was convicted.

## B.

 Riley next argues that the facts alleged in his petition and affidavits satisfy the interests of justice exception to the 2–year time-bar. Under the "interests of justice" exception to the 2–year time-bar, a court may hear a petition if the petitioner alleges "that the petition is not frivolous and is in the interests of justice." Minn.Stat. § 590.01, subd. 4(b)(5). To consider a petition in the interests of justice, "the defendant must not have deliberately and inexcusably failed to raise the issue on direct appeal." *Gassler*, 787 N.W.2d at 586. Moreover, the interests of justice exception is reserved for exceptional cases. *Id.*

 Even when viewed in a light most favorable to Riley, the alleged facts fail as a matter of law to satisfy the interests of justice exception to the 2–year time-bar.

---

**7.** Similarly, Goodwin's claim that he helped Papasodora *destroy* "blood-stained" clothes does not satisfy the independent corroboration requirement of Minn. R. Evid. 804(b)(3). Specifically, Goodwin does not describe the clothing or connect either the clothing or the bloodstains to the victims. Without more, the clothing is not sufficient to satisfy the independent corroboration requirement.

The alleged facts fail to demonstrate that Riley did not deliberately or inexcusably fail to raise the issue in question on direct appeal. Riley admits that he refused to cooperate with his lawyers at the time of his trial and none of the alleged facts justifies Riley's 16–year delay in asserting his claim that Papasodora committed the murders.[8] Because the petition, and files and records of the proceeding show that Riley is conclusively entitled to no relief, we affirm the postconviction court's summary denial of Riley's second postconviction petition.[9]

## II.

Riley next argues that the postconviction court erred in denying his motion for fingerprint and forensic testing pursuant to Minn.Stat. § 590.01, subd. 1a. According to Riley, the DNA testing of certain items at the crime scene could indicate other perpetrators, and DNA testing techniques have significantly advanced since his conviction such that new testing could exonerate him.

In *State v. Gisege,* we considered, among other things, whether postconviction relief was available for a claim for independent DNA retesting of blood evidence connected to a murder. 582 N.W.2d 229, 230 (Minn.1998). We rejected the claim, concluding that the State's DNA evidence was known at the time of trial, that the question of independent retesting was not raised either at trial or on direct appeal, and therefore the claim was barred because it did not meet the requirements of

Minn.Stat. §§ 590.01–.06. *Gisege,* 582 N.W.2d at 231.

The Legislature later amended Minn. Stat. § 590.01 to add subdivision 1a and new subdivision 1(2). Act of May 25, 1999, ch. 216, art. 3, §§ 2, 3, 1999 Minn. Laws 1271, 1312–13. Those changes are consistent with our decision in *Gisege.* Subdivision 1a provides that a person convicted of a crime may bring a motion for fingerprint or forensic DNA testing to demonstrate the person's "actual innocence" if two conditions are met. Minn.Stat. § 590.01, subd. 1a(a)(1)-(2). First, the testing is to be conducted on "evidence secured in relation to the trial which resulted in the conviction." *Id.,* subd. 1a(a)(1). Second, the evidence "was not subject to the testing because either the technology for the testing was not available at the time of the trial or the testing was not available as evidence at the time of the trial." *Id.,* subd. 1a(a)(2).

The State argues that Riley does not satisfy the requirements of subdivision 1a(a)(2). We agree. Riley's motion addresses three types of evidence: the hair sample, the drinking vessels, and the fingerprint evidence, each of which we discuss in turn.

First, Riley seeks DNA testing of a hair sample from a comforter that was on a couch in the living room of the farmhouse. A BCA expert testified at a pretrial hearing that the hair sample consisted of five animal hairs, some kinky-curly synthetic fibers, and one human hair that was medium in color that had fallen from the head of a Caucasian. Riley's motion regarding

---

**8.** Because Riley fails to meet the statutory exceptions under Minn.Stat. § 590.01, we do not analyze whether Riley's petition also fails under *Knaffla. Accord Colbert v. State,* 811 N.W.2d 103, 106 n. 3 (Minn.2012).

**9.** For the same reasons, we deny Riley's recently-filed motion to remand this appeal to

the district court for expansion of the record. Because we conclude that the district court did not abuse its discretion in summarily denying Riley's second postconviction petition, there is no reason to remand this appeal for development of the record.

the hair sample fails to satisfy the requirements of subdivision 1a(a)(2) because the hair sample was tested and identified at the time of trial, and Riley has not established any new type of DNA testing that was either not available at the time of trial or not available as evidence at the time of trial.

Second, Riley seeks DNA testing of several drinking vessels found at the scene. These items were previously subjected to fingerprint but not DNA testing. The police found two red plastic cups, one of which contained a usable print of Riley, and the other of Greenwood. Walter's fingerprint was discovered on a ceramic cup. Three Miller beer bottles found in the kitchen and near a tree west of the house contained no prints suitable for testing. A Michelob beer container had one usable print belonging to Riley. Two Coke cans found near the target tree contained one print belonging to Greenwood, one unidentified print, and two prints unsuitable for comparison. An unidentified beer bottle contained no prints suitable for matching. These vessels were tested for fingerprints at the time of trial, and the reason for the lack of DNA testing was neither because the "technology for the testing was not available" nor because "the testing was not available as evidence." Riley's motion regarding the drinking vessels fails to satisfy the requirements of subdivision 1a(a)(2) because Riley has not established any change in fingerprint or forensic testing in the time since his trial that would materially change the types of testing available or testing available as evidence.

Third, Riley asks the court to release "unidentified fingerprints" so that a "well-known and well-respected" fingerprint examiner can examine them. Riley, however, does not identify a qualified scientific expert. Riley requests that we allow him to retest fingerprints found on the Chevrolet Beretta, which was the getaway car. But the only usable print found on the car belonged to Tholkes, the car's owner. Riley has not established that either new technology would allow more usable prints to be uncovered, or that the prints were not tested at trial because the technology was not available with which to test them. Because Riley failed to establish that his motion for fingerprint or forensic testing met the requirements of Minn.Stat. § 590.01, subd. 1a(a)(2), the postconviction court did not err in denying the motion.

Affirmed.