*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1218**

Mark Oran Schorn, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed May 16, 2016
Affirmed
Reilly, Judge**

Ramsey County District Court
File No. 62-K2-05-003338

Cathryn Middlebrook, Chief Appellate Public Defender, Carol Comp, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Stauber, Judge.

## U N P U B L I S H E D   O P I N I O N

**REILLY**, Judge

Appellant challenges the denial of his petition for postconviction relief, arguing that deficiencies uncovered at the St. Paul Police Department Crime Lab meet the requirements

of (1) the newly-discovered-evidence and (2) the interests-of-justice exceptions to the two-year time-bar.  Because the district court did not abuse its discretion, we affirm.

## FACTS

In August 2005, Ramsey County deputies encountered appellant outside of a residence carrying a knife and a night vision scope.  Upon a search of appellant, a deputy discovered a plastic baggie containing a substance suspected to be methamphetamine.  The St. Paul Police Department Crime Lab (SPPDCL) determined the substance tested positive for methamphetamine.  Appellant pleaded guilty to an amended charge of controlled substance crime in the fifth degree in January 2006.

In 2012, the SPPDCL was the subject of a *Frye-Mack* hearing in Dakota County that revealed serious systematic errors in laboratory protocols and testing procedures at the SPPDCL.  In July 2014, more than eight years after pleading guilty, appellant filed a petition for postconviction relief.  The postconviction court denied his petition for relief because it was untimely and no statutory exception to the time-bar applied.  This appeal follows.

## D E C I S I O N

Appellant argues that the district court erred in summarily denying his petition for postconviction relief because (1) his petition alleges the existence of newly discovered evidence and (2) the petition is not frivolous and is in the interests of justice.  "We review a denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012).  "A postconviction court abuses its discretion when its decision is based on an erroneous

2

view of the law or is against logic and the facts in the record." *Id.* (internal citations omitted). The postconviction court's legal conclusions are reviewed de novo. *Id.*

Minnesota's postconviction relief statute provides that no petition may be filed more than two years after the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed, or (2) an appellate court's disposition of petitioner's direct appeal" unless it satisfies one of five statutory exceptions. Minn. Stat. § 590.01, subd. 4(a)-(b) (2014). Appellant was sentenced in June 2006, and he did not appeal. His petition was not filed until July 2014, more than eight years after his sentencing. Thus, if appellant is unable to "demonstrate that an exception applies and that application of the exception is timely, the postconviction court may summarily deny the petition as untimely." *Roberts v. State*, 856 N.W.2d 287, 290 (Minn. App. 2014), *review denied* (Minn. Jan. 28, 2015). Appellant argues two exceptions apply in this case. First, he argues that discovery of the deficiencies at SPPDCL constitutes "newly-discovered-evidence" within the meaning of Minn. Stat. § 590.01, subd. 4(b)(2). Second, he invokes the "interests-of-justice" exception under Minn. Stat. § 590.01, subd. 4(b)(5).

## I.

Appellant argues that the deficiencies at SPPDCL, which first came to light in 2012, constitute newly discovered evidence such that the newly-discovered-evidence exception applies. *See* Minn. Stat. § 590.01, subd. 4(b)(2). The newly-discovered-evidence exception requires that the petitioner show that the evidence

> (1) is newly discovered; (2) could not have been ascertained by the exercise of due diligence by the petitioner or the petitioner's attorney within the 2-year time-bar for filing a

3

> petition; (3) is not cumulative to evidence presented at trial; (4) is not for impeachment purposes; and (5) establishes by the clear and convincing standard that petitioner is innocent of the offenses for which he was convicted.

*Riley*, 819 N.W.2d at 168.

We recently considered whether the deficiencies at the SPPDCL met the newly-discovered-evidence exception requirements in *Roberts*. 856 N.W.2d at 291. *Roberts* guides the analysis of appellant's newly-discovered-evidence exception. Here, as in *Roberts*, the complaint informed appellant that the substance was submitted to the crime lab for testing. Appellant had access to the test results under Rule 9.01 of the Minnesota Rules of Criminal Procedure. Like Roberts, appellant does not contend that he made an effort to investigate the test results, or claim that he was somehow prevented from doing so. His only contention is that the deficiencies could not have been discovered through ordinary due diligence. In *Roberts*, we determined that the SPPDCL deficiencies could in fact be discovered through the exercise of due diligence, because those same deficiencies were eventually discovered by a defendant in a criminal controlled substance case. *Id.*

Appellant argues the present case is distinguishable from *Roberts* because he submitted the affidavit of Lori Traub, the attorney who uncovered the deficiencies in the SPPDCL in 2012, to support his argument that he could not have discovered the deficiencies through the exercise of due diligence. In her affidavit, Ms. Traub asserts that it was only because of her specialized training that she was able to uncover the deficiencies at the SPPDCL. Ms. Traub's training consisted of six weekend training sessions over a period of 18 months. Specifically, Ms. Traub asserts that her training led to her decision

4

to create a disclosure request to send to the SPPDCL. This led to her discovery that the SPPDCL was not, and has never been, an accredited lab. Her affidavit states that an attorney without scientific training would not have recognized any of these problems.

We are not persuaded by appellant's argument because, although Ms. Traub's specialized training may have played a role in her discovery of the deficiencies, that fact does not mean that other attorneys could not have discovered the deficiencies through due diligence.

Further, the "new evidence" presented by appellant shows only that deficiencies may have existed at the SPPDCL at the time that the suspected methamphetamine was tested. It does not show that appellant did not possess a controlled substance, especially when considered in light of the circumstances surrounding appellant's arrest. To prove innocence under the clear and convincing standard, "a party's evidence should be unequivocal, intrinsically probable and credible, and free from frailties." *Riley*, 819 N.W.2d at 170 (quoting *Gassler v. State*, 787 N.W.2d 575, 583 (Minn. 2010)). "Actual innocence is more than an uncertainty about guilt . . . [it] requires evidence that renders it more likely than not that no reasonable jury would convict." *Id.* And in this case, appellant pleaded guilty and admitted he possessed methamphetamine. At no time did he assert he was innocent of the charge.

We conclude that appellant has not met his burden in establishing that the new evidence regarding the crime lab could not have been discovered with due diligence or that the new evidence clearly and convincingly establishes his innocence. As such the postconviction court did not abuse its discretion by refusing to consider appellant's

5

untimely petition under the newly-discovered-evidence exception to the statutory time-bar to postconviction relief.

## II.

Appellant next argues that the "interests-of-justice" exception applies to his petition. This exception requires a petition to establish "to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). The interests-of-justice exception applies only in exceptional situations. *Gassler*, 787 N.W2d at 586. The supreme court has identified a "non-exclusive list of factors to be considered" when determining whether this exception applies:

> [C]ourts should weigh the degree to which the party alleging error is at fault for that error, the degree of fault assigned to the party defending the alleged error, and whether some fundamental unfairness to the defendant needs to be addressed. We have also acted in the interests of justice when necessary to protect the integrity of judicial proceedings.

*Id*. at 586-87.

We recently considered whether the interests-of-justice exception applies when "[t]he alleged 'error' [was] the post-plea discovery of deficient testing at the crime lab." *Roberts*, 856 N.W.2d at 293. Here, as in *Roberts*, appellant had the opportunity to challenge the validity of the test results. We recognized in *Roberts* that the information regarding the SPPDCL could have influenced the defendant's decision to waive his right to a trial and plead guilty, but determined "it is not fundamentally unfair to hold [appellant] accountable for his choice to accept the state's scientific evidence at face value and resolve his case with a guilty plea in exchange for a reduced sentence." *Id*.

6

Appellant asserts that his petition has substantive merit based on a *Brady* violation, a due process violation, a manifest injustice, and ineffective assistance of counsel. Appellant was represented by counsel and pleaded guilty, as such, his *Brady* argument and due process argument fail because they have been waived. *See State v. Ford*, 397 N.W.2d 875, 878 (Minn. 1986) (explaining a counseled guilty plea "has traditionally operated, in Minnesota and in other jurisdictions, as a waiver of all non-jurisdictional defects arising prior to the entry of the plea"). Thus we need only address appellant's arguments that he received ineffective assistance of counsel and is entitled to withdraw his guilty plea based on manifest injustice.

**Ineffective Assistance of Counsel**

Appellant argues that his attorney was ineffective in this case because he did not demand and review the underlying SPPDCL file. Claims of ineffective assistance of counsel require a party to show "(1) that his counsel's representation 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Nissalke v. State*, 861 N.W.2d 88, 94 (Minn. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). "The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266-67 (Minn. 2014) (internal quotations omitted) (noting that counsel's performance is presumed to be reasonable). We need not analyze both prongs if one is determinative. *Id*. at 267.

Appellant cites *State v. Nicks* for the proposition that if counsel's conduct or decision results from inattention, as opposed to a strategic decision, then it may amount to ineffective assistance of counsel. 831 N.W.2d 493, 507-08 (Minn. 2013). In *Nicks*, the defendant's attorney requested phone records that were relevant to his defense theory, but then "inexplicably took no further action" when he did not receive the records that were requested. *Id.* at 507. Appellant argues that, in his case, his counsel's advice to accept a plea was made as the result of counsel's "unreasonable failure to investigate" the SPPDCL test results.

This case is distinguishable from *Nicks*. Unlike *Nicks*, there is no indication that appellant's counsel ever pursued a strategy of challenging the SPPDCL test results, and then failed to follow up on that strategy. Instead, his counsel's strategy involved weighing the evidence and pursuing a plea agreement for appellant in exchange for a reduced sentence. While his counsel may have been influenced by the test results, there is no indication that this decision fell below an objective standard of reasonableness. Therefore, it was not an abuse of discretion for the postconviction court to find that appellant's claim of ineffective assistance of counsel was without merit.

**Manifest Injustice**

Finally, appellant contends that it was an abuse of discretion for the postconviction court to deny appellant's motion to withdraw his guilty plea in order to correct a manifest injustice. A manifest injustice exists when a plea is not valid. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A valid plea must be accurate, voluntary, and intelligent. *Id.*

Appellant contends that he should be entitled to withdraw his plea because it was not accurate, not voluntary, and not made intelligently.

First, appellant argues that his plea was not accurate because it "could not be factually accurate unless the [tested] substances actually contained a controlled substance." In order for a plea bargain to be accurate, it must contain a proper factual basis. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012). A proper factual basis requires that there be "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Kelsey v. State*, 298 Minn. 531, 532, 214 N.W.2d 236, 237 (Minn. 1974). In this case, appellant has not at any point contended that the substance was not methamphetamine. At best, appellant could have called into question the reliability of the state's method for testing the suspected substance in this case. But the record still contains evidence sufficient to conclude that appellant's conduct is sufficient for the crime to which he pleaded guilty. Appellant has not shown that his plea was inaccurate.

Second, appellant claims that the plea was not voluntary. He argues that because the testing at SPPDCL was not credible, the results used against him constituted an improper pressure that induced him to plead guilty. The voluntariness requirement exists to ensure that a defendant does not plead guilty due to improper pressure or coercion. *Raleigh*, 778 N.W.2d at 96. Voluntariness is determined by considering all relevant circumstances. *Id.* At his plea hearing, appellant admitted to carrying the drugs, admitted that the drugs belonged to him, and agreed that they tested positive for methamphetamine.

9

However, his decision not to confront the state's evidence and accept it at face value does not mean that his plea was made under improper pressure or coercion.

Third, appellant argues that his plea was not made intelligently because he did not know about the testing deficiencies at SPPDCL. But the intelligence requirement only requires "that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea." *Raleigh*, 778 N.W.2d at 96. In this case, the record indicates that appellant fully understood the charges against him, the rights he waived, including trial, and the consequences of his plea. Accordingly, it was not an abuse of discretion for the postconviction court to find that appellant's plea was made intelligently.

In sum, appellant has failed to show that either the newly-discovered-evidence exception or the interests-of-justice exception applies to his petition. "A postconviction petitioner is not entitled to relief or an evidentiary hearing on an untimely petition unless he can demonstrate that he satisfies one of the [statutory] exceptions." *Roberts*, 856 N.W.2d at 290. Accordingly, it was not an abuse of discretion for the postconviction court to deny appellant's petition for postconviction relief, including the denial of an evidentiary hearing.

**Affirmed.**

10