*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0117**

State of Minnesota,
Respondent,

vs.

Michael William Kirby,
Appellant.

**Filed July 18, 2016
Affirmed
Bjorkman, Judge**

Steele County District Court
File No. 74-CR-13-2262

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Owatonna, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Peterson, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges his conviction of first-degree controlled-substance crime, arguing that (1) the evidence was not sufficient to prove he knowingly possessed methamphetamine, (2) the district court abused its discretion by permitting an expert to testify about the value of methamphetamine, and (3) he is entitled to a new trial based on recanted testimony and newly discovered evidence. We affirm.

**FACTS**

On November 22, 2013, Deputy Anthony Padilla of the Steele County Sheriff's Department stopped a vehicle driven by appellant Michael William Kirby. As he approached the vehicle, Deputy Padilla smelled a strong odor of marijuana. Kirby denied smoking marijuana, but admitted that there was marijuana inside the vehicle. Kirby stated that the marijuana was in a plastic bag located on the floor behind the front passenger seat. Deputy Padilla located the plastic bag, which contained several cans and a bag containing 217.55 grams of marijuana. Deputy Padilla removed the marijuana and placed it in his squad car, and contacted dispatch for assistance.

Minnesota State Trooper Patric Ignaszewski responded to the scene. Deputy Padilla asked Kirby to get out of the vehicle, and had his canine partner sniff the vehicle for other narcotics. The canine entered the vehicle through the driver's door and alerted to the center console. The canine then alerted to the plastic bag that was still on the floor behind the passenger seat.

During a subsequent full search of the vehicle, Deputy Padilla located a methamphetamine pipe in the center console. Trooper Ignaszewski found three cans that appeared to contain fruit punch, sweet tea, and shaving cream. The fruit punch and sweet tea cans were in the plastic bag, and it appeared to Trooper Ignaszewski that the shaving cream can had rolled out. All three cans had false bottoms. The bottom of the shaving cream can contained three bags of methamphetamine with a total weight of 70.525 grams.

Kirby was charged with first-degree controlled-substance crime (methamphetamine) and fifth-degree controlled-substance crime (marijuana). Prior to trial, Kirby filed a notice of an alternative-perpetrator defense. At the pretrial conference, Kirby indicated that he did not know about the methamphetamine in the vehicle, and that it belonged to either Mark Buskovick, the vehicle owner, or to Ricardo Elizondo, who recently sold the vehicle to Buskovick.

At trial, Elizondo testified that he sold the vehicle to Buskovick in September 2013, approximately two months before the stop. Before transferring the vehicle to Buskovick, Elizondo removed all of his personal belongings and cleaned the vehicle's interior. Elizondo stated that the marijuana, the methamphetamine, the methamphetamine pipe, and the false-bottom cans did not belong to him.

Buskovick testified that when he purchased the vehicle, there was some clutter and loose bolts, but "nothing big" in the vehicle. He subsequently had the vehicle cleaned and had new seats installed. Buskovick loaned the vehicle to Kirby in November 2013. Buskovick stated that the methamphetamine and false-bottom cans did not belong to him.

Buskovick did not recall what was inside the vehicle when he loaned it to Kirby, explaining that his kids often played in the vehicle and "might have thrown stuff in there."

The state offered expert testimony from Sergeant Andrew Drenth, who worked with the Drug Task Force of the Owatonna Police Department. Sergeant Drenth detailed his training and experience in determining the value of controlled substances. He obtains pricing information through controlled buys, from informants, and from speaking with various individuals "at the street level." Over Kirby's foundation objection, Sergeant Drenth testified that in November 2013, methamphetamine sold for $100 to $150 per gram. The state offered this testimony to rebut Kirby's alternative-perpetrator defense, arguing that it was unlikely that someone would leave highly valued controlled substances in a vehicle that someone else was using.

The jury found Kirby guilty of both controlled-substance crimes. Kirby moved for a new trial, arguing that the evidence was insufficient to prove that he knowingly possessed methamphetamine and that the district court erred by allowing Sergeant Drenth's testimony. The district court denied the motion and sentenced Kirby to 161 months in prison. Kirby appealed.

While Kirby's appeal was pending, Buskovick sent Kirby a letter recanting a portion of his trial testimony. The letter said that the methamphetamine belonged to Joshua Ortega. This court stayed Kirby's appeal to allow him to pursue postconviction relief. The postconviction court held an evidentiary hearing.

At the postconviction hearing, Buskovick testified that in October 2013, he bought the vehicle from Daniel Segura, with Elizondo's assistance. Buskovick said that he gave

4

Ortega a ride on November 9, and that Ortega left a bag in the backseat. Buskovick loaned the vehicle to Kirby later in November and left town. While Buskovick was gone, Ortega called him to retrieve the bag. Buskovick attempted to get someone to return the bag to Ortega, but then "forgot about it." Buskovick testified that the methamphetamine and marijuana belonged to Ortega.

Buskovick explained that he did not testify truthfully at Kirby's trial because he was afraid. He described being assaulted in December 2013 by Ortega's brother and another man, and Ortega telling him, while the two were at the Lino Lakes prison, not to say "anything stupid" at Kirby's trial. But when confronted with evidence that Ortega was not in prison until after Kirby's trial, Buskovick claimed that Ortega told him over the phone to tell the truth at trial. Other testimony presented during the postconviction hearing revealed that Buskovick had conversations with several law-enforcement officers regarding Ortega and methamphetamine distribution, but never mentioned an assault or threat. One of the officers, Agent Thomas Oliveto, noted that Buskovick was not questioned about Kirby's case.

Ortega testified that Buskovick never gave him a ride in the vehicle. He also stated that he did not use false-bottom cans, did not leave one with Buskovick, and did not leave controlled substances in the vehicle. Ortega acknowledged providing methamphetamine to both Kirby and Buskovick on prior occasions, but stated he would never leave several thousand dollars' worth of methamphetamine in the back of a vehicle. Ortega denied assaulting Buskovick and denied making any statements to Buskovick about his testimony in Kirby's trial.

The district court denied Kirby's petition, finding that Buskovick's testimony at the postconviction hearing was not credible, and that Ortega's testimony was credible. The court expressly concluded that Buskovick was manufacturing a defense for Kirby. Kirby's appeal was subsequently reinstated.

## D E C I S I O N

**I.     The evidence was sufficient to prove that Kirby knowingly possessed methamphetamine.**

When reviewing the sufficiency of the evidence, "we determine whether the legitimate inferences drawn from the facts in the record would reasonably support the jury's conclusion that the defendant was guilty beyond a reasonable doubt." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). "We give due regard to the defendant's presumption of innocence and the [s]tate's burden of proof, and will uphold the verdict if the jury could reasonably have found the defendant guilty." *Id.*

To support a conviction of first-degree controlled-substance crime, the state was required to prove that Kirby unlawfully possessed one or more mixtures of a total weight of 25 grams or more containing methamphetamine. Minn. Stat. § 152.021, subd. 2(a)(1) (2012). And "the state must prove that [the] defendant consciously possessed . . . the substance and that [the] defendant had actual knowledge of the nature of the substance." *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975); *see also* 10A *Minnesota Practice*, CRIMJIG 20.04 (Supp. 2012) (stating that an element of first-degree controlled-substance crime is that the defendant "knowingly possessed" the requisite weight of methamphetamine).

6

When, as here, a controlled substance is not found on the defendant's person, the state must prove he constructively possessed it by showing that the controlled substance was in a place under his exclusive control, or that there is a strong probability that he was, at the time of discovery, consciously exercising dominion and control over the substance. *State v. Sam*, 859 N.W.2d 825, 833 (Minn. App. 2015). If a driver does not have exclusive possession of a vehicle, it cannot be automatically inferred that controlled substances found in the vehicle belonged to him. *Id.* at 834.

Knowing possession is typically proved through circumstantial evidence. *See State v. Ali*, 775 N.W.2d 914, 919 (Minn. App. 2009) ("Knowledge is customarily determined from circumstantial evidence."), *review denied* (Minn. Feb. 16, 2010). We apply a two-step analysis when reviewing a conviction supported by circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved, which are the circumstances supporting the jury's verdict. *Id.* at 598-99. "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014) (quotations omitted). If the reasonable inferences are consistent with guilt, a defendant must point to evidence in the record that is consistent with a rational hypothesis other than guilt. *State v. Taylor*, 650 N.W.2d 190, 206 (Minn. 2002).

The circumstances proved include the following: (1) Elizondo sold the vehicle to Buskovick in September 2013; (2) the vehicle was cleaned before and after the sale by various people; (3) when Buskovick took possession of the vehicle there was some clutter, but "nothing big" in it; (4) Buskovick loaned the vehicle to Kirby in November 2013;

7

(5) Kirby was stopped by law enforcement while driving the vehicle approximately one week later; (6) Kirby admitted to law enforcement that he had marijuana in a plastic bag behind the front passenger seat; (7) Deputy Padilla found a bag containing 217.55 grams of marijuana inside a larger plastic bag that also contained cans; (8) the cans had false bottoms, one of which concealed 70.525 grams of methamphetamine; (9) a methamphetamine pipe was in the center console; (10) neither the methamphetamine nor the pipe belonged to Elizondo or Buskovick; (11) the approximate price of one gram of methamphetamine in November 2013 was $100 to $150.

Kirby acknowledges that the circumstances proved lead to a reasonable inference that Kirby knowingly possessed the methamphetamine found in the vehicle he was driving. But he argues that the circumstances proved are consistent with another reasonable hypothesis—that someone else put the can containing methamphetamine in the vehicle, and Kirby was unaware of its presence. Kirby points out that Buskovick did not know exactly what was in the vehicle when he loaned it to Kirby, and that the people who cleaned the vehicle could have placed the methamphetamine in the vehicle.

In support of this argument, Kirby cites to *State v. Sam*, where the defendant was stopped while driving another person's vehicle. 859 N.W.2d at 828. Law enforcement found methamphetamine in the glove compartment and a handgun in the center console. *Id*. at 829. Prior to the stop, officers observed the front-seat passenger make several movements toward the center of the vehicle, but did not observe similar behavior by Sam. *Id*. at 828. Only the passenger had methamphetamine on his person. *Id*. at 828-29. This court reversed Sam's controlled-substance conviction, holding that it was reasonable to

8

infer from the circumstances proved that the passenger placed the methamphetamine in the vehicle without Sam's knowledge. *Id.* at 835.

This case is distinguished from *Sam* for several reasons. First, although Kirby borrowed the vehicle from another individual, the circumstances proved establish that the owner—Buskovick—did not place the methamphetamine in the vehicle. Second, Kirby was the only person in the vehicle at the time of the stop. Kirby's suggestion that the people who cleaned the vehicle after Buskovick purchased it could have placed the methamphetamine in the vehicle is mere speculation.

On this record, we conclude that the reasonable inferences drawn from the circumstances proved are only consistent with Kirby's guilt. The methamphetamine was located in the vehicle driven and solely occupied by Kirby. During the traffic stop, Kirby readily admitted that the marijuana in the plastic bag belonged to him. The marijuana was in the same bag that contained the methamphetamine. The methamphetamine did not belong to Elizondo, the vehicle's previous owner, or Buskovick, who loaned the vehicle to Kirby. And it is unreasonable to infer that someone would leave several thousand dollars' worth of methamphetamine lying in a plastic bag in the back of a vehicle operated by someone else. The only rational hypothesis from the circumstances proved is that Kirby knowingly possessed the methamphetamine.

## II. The district court did not abuse its discretion by permitting an expert to testify about the methamphetamine's value.

"If . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training, or education, may testify thereto in the form of an opinion or otherwise." Minn. R. Evid. 702. "The opinion must have foundational reliability." *Id*. When analyzing foundational reliability, courts first consider "the proffered testimony in light of the purpose for which it is being offered." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 167-68 (Minn. 2012). Next, courts "consider the underlying reliability, consistency, and accuracy of the subject about which the expert is testifying." *Id*. at 168. Lastly, the proponent of the evidence must show that it is reliable in that particular case. *Id*. We review the admission of expert testimony for clear abuse of discretion. *State v. Ritt*, 599 N.W.2d 802, 810 (Minn. 1999).

Kirby argues that the district court abused its discretion by permitting Sergeant Drenth to testify about the price of methamphetamine in November 2013. Prior to offering this testimony, Sergeant Drenth detailed his extensive training and experience in the field of narcotics. He testified that many factors impact the price of methamphetamine, including the general supply in the area, whether law enforcement has recently seized the drug, and the quantity of the drug being purchased. Sergeant Drenth confirmed that he was "up to date" on the factors that affect the price of methamphetamine at the time of the offense. And he testified that the price at that time was between $100 and $150 per gram.

Kirby argues that Sergeant Drenth's testimony lacked foundation because he did not use a precise mathematical formula to calculate the price. He cites no authority that requires a witness to make precise mathematical calculations in order to testify about drug prices. Rather, he relies on *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005), for the general proposition that "[a]n expert opinion that

10

fails to consider the relevant facts of the case is fundamentally unsupported[.]" We are not persuaded. Sergeant Drenth testified that he was up to date on the relevant factors that affected the price of methamphetamine in November 2013. The fact that he considered these factors to establish a price range, rather than applying a precise mathematical formula to calculate a price does not mean that his testimony lacked foundation. On this record, we discern no abuse of discretion by the district court in admitting Sergeant Drenth's testimony.

**III.    The district court did not abuse its discretion by denying postconviction relief based on recantation and newly discovered evidence.**

We review the denial of a petition for postconviction relief based on recanted testimony or newly discovered evidence for an abuse of discretion. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013); *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley*, 819 N.W.2d at 167 (quotation omitted).

### A.    Recanted Testimony

A new trial may be granted on the grounds of false or recanted testimony where (1) the court is reasonably well satisfied that the testimony of a material witness was false; (2) the jury might have reached a different conclusion without the testimony; and (3) the petitioner was surprised by the testimony and was unable to counteract it or did not know it was false until after the trial. *Nicks*, 831 N.W.2d at 511; *Dobbins v. State*, 788 N.W.2d 719, 733 (Minn. 2010).

11

At the postconviction hearing, Buskovick recanted part of his trial testimony. At trial, Buskovick testified that he did not know exactly what was in his vehicle when he loaned it to Kirby, but that any controlled substances did not belong to him. In contrast, at the postconviction hearing, he testified that he knew there were controlled substances in the vehicle, because Ortega had placed them in the back seat.

Buskovick's recanted testimony fails the first prong of the recanted-testimony analysis. The district court expressly found that Buskovick's testimony at the postconviction hearing was not credible. Based on this finding, the district court determined that it was "not at all satisfied that . . . Buskovick's trial testimony was false." Because we defer to the district court's credibility determination, we conclude that Kirby is not entitled to postconviction relief based on recanted testimony. *Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013) (stating that "[t]he postconviction court is in the best position to evaluate witness credibility").

**B.      Newly Discovered Evidence**

Kirby also argues that he is entitled to postconviction relief because Ortega's postconviction testimony constitutes newly discovered evidence. A new trial may be granted on this basis when a defendant proves:

> (1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result.

*Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997).

12

At the postconviction hearing, Ortega testified that he did not ride in Buskovick's vehicle, did not use false-bottom cans to conceal methamphetamine, and did not leave any controlled substances in the vehicle. He admitted providing methamphetamine to Kirby and Buskovick on prior occasions, but stated that he would not leave several thousand dollars' worth of the drug in a vehicle he did not possess. Ortega suggested that Buskovick could have obtained methamphetamine from Segura.[1]

Ortega's testimony satisfies the first three prongs of the *Rainer* test. His testimony was not known at the time of Kirby's trial. Ortega's name was not mentioned in connection with this case until Buskovick recanted his trial testimony. Although Kirby's attorney could have uncovered Ortega's testimony through due diligence, nothing in the record suggests counsel had any reason to do so. And nothing about Ortega's testimony is cumulative, impeaching, or doubtful. Ortega testified about new information, and the postconviction court specifically found that his testimony was credible.

But we conclude that Ortega's testimony fails to satisfy *Rainer*'s fourth prong. At trial, Kirby argued that Buskovick, Elizondo, the people who cleaned the vehicle, or someone else placed the methamphetamine in the vehicle, and that he did not know about it. The substance of Ortega's testimony is that he did not ride in or put any controlled substance in the vehicle. While new, Ortega's testimony adds nothing to Kirby's alternative-perpetrator defense. In sum, this "newly discovered evidence" was not likely

---

[1] Kirby asserts that Ortega testified that the methamphetamine belonged to Segura. But the relevant portions of the transcript reveal that Ortega was actually explaining that the *vehicle* was owned by Segura, and Buskovick was in the process of purchasing it from him.

to produce an acquittal on the first-degree controlled-substance charge.  Because Ortega's testimony does not satisfy the fourth prong of the *Rainer* test, we discern no abuse of discretion in the denial of postconviction relief.

**Affirmed.**